C. J. ELSENPETER, GUARDIAN OF VIRGINIA BOWMAN, v.
A. POTVIN, *d. b. a.* MOTOR INN, AND ANOTHER.[1]

August 21, 1942.

No. 33,059.

*Reynolds & McLeod* and *Bundlie, Kelley & Finley*, for relators.
*DeLury & Peterson*, for respondent.

GALLAGHER, CHIEF JUSTICE.

*Certiorari* to review an order of the industrial commission deny-
ing a joint petition of the employer and insurer to vacate an
award (made on agreement of the parties) and for a rehearing
on the question of liability.

The decedent, Edward Bowman, was fatally injured by an ex-
plosion in a building in Walker, Minnesota, on June 27, 1940. The
building was owned by relator A. Potvin, who operated a garage
therein under the name of "Motor Inn." On July 18, 1940, the
employer and insurer filed a "first report of injury" with the in-
dustrial commission. It named "Motor Inn Garage" as employer
and Edward Bowman as injured employe and stated that Bow-
man's average earnings were $20 per week. On August 21, 1940,

[1]Reported in 5 N. W. (2d) 499.

a "petition and agreement for award in fatal cases" was filed with the commission. It provided, among other things, that the employe "did on June 27, 1940, at 4 o'clock P. M., sustain injury while employed by said employer, which injury occurred at Motor Inn Garage, Walker, Minn., and resulted in the death of said employe on June 27, 1940; that said deceased employe was receiving at the time of the injury wages at the rate of $20.00 per week." The petition was signed: "C. J. Elsenpeter, Guardian of Virginia Bowman, Dependent of Deceased Employe. A. Potvin d/b/a/ Motor Inn, Employer, by Robert L. MacPhail for Hardware Mutual Casualty Co., Insurer of Employer." An award of compensation based on the agreement was made and filed by the commission on the same day.

On February 28, 1941, the employer and insurer petitioned the commission to vacate the award upon the ground that the agreement on which it was made was entered into under a "mistake of fact and law, and under the erroneous conclusion that said deceased Edward Bowman was at the time of his accidental death in the employ of the above named petitioner, A. Potvin." The petition was supported by the affidavit of Potvin, which in part reads:

"That your affiant had immediate notice of the accidental injuries and death of the deceased employe above named. That such accident and injury, resulting in death, occurred in the premises owned by your affiant, and that through error and mistake the fact of such injury and death was reported by affiant to his compensation insurer, the Hardware Mutual Casualty Company. That the making and filing of such report was done through error and mistake. That the deceased Edward Bowman was not in the employ and service of your affiant, and that in the belief and opinion of affiant, no liability exists on his part for compensation for the injuries and death of said employe to any surviving dependents of said deceased Edward Bowman."

It was also supported by the affidavits of John L. Nesbitt and Robert L. MacPhail, claim representatives of the insurer, who

participated in the settlement. The affidavits of Nesbitt and Mac-Phail each stated that from the "information available" to affiant at the time of the investigation he erroneously concluded that the deceased was an employe of Potvin at the time of his death. Neither affidavit stated what the information was that prompted the erroneous conclusion as to decedent's status on the date of the injury.

The respondent filed objections to the petitions to vacate and supported them by several affidavits, to which reference will hereinafter be made. The commission denied the petition on May 7, 1941.

The petition to vacate here involved was filed on June 13, 1941. It is a joint petition by the employer and insurer and alleges in part that the petition and agreement upon which the award was based was negotiated and entered into between the representative of the dependent and the Hardware Mutual Casualty Company, as agent and insurer of Potvin, and "under the erroneous conclusion and in pursuant [sic] to erroneous information to the effect that said deceased Edward Bowman was at the time of his death in the employ of the above named petitioner, A. Potvin." Relator Hardware Mutual Casualty Company separately alleges that at the time of the investigation Potvin advised and informed it that Bowman was at the time of his death in the service and employ of Potvin; that subsequent to the 30th day of January 1941 the company was informed by Potvin that his former statement "was untrue, was an error, and that in truth and in fact said deceased was not on the date thereof an employe of said alleged employer, A. Potvin"; that, "as a consequence of the foregoing mistaken, erroneous or dishonest statements on the part of the petitioner herein, A. Potvin, that they have been grossly mislead [sic] to their damage in assuming and accepting a responsibility and liability under the Workmen's Compensation Law of the state of Minnesota." The petition was supported by the affidavit of Potvin that he reported Bowman as his employe for the purpose of aiding and assisting Bowman's widow to procure and obtain workmen's compensation

benefits from his (Potvin's) insurer. The employer and insurer also filed an affidavit by Ferris Gordon, court reporter for the Honorable Graham M. Torrance, district judge of the fifteenth judicial district, in which Gordon certified as to the correctness of certain exhibits (A and B) purporting to be a transcript of proceedings in two actions tried before Judge Torrance in Cass county. These actions were brought against Potvin by Paul P. Wigington and Ray Krueger, who were in the building at the time of the explosion, for the purpose of recovering damages for injuries sustained by them. Exhibit A is a transcript of testimony given by Potvin and Norris Bowman (father of Edward) at the trial of these actions. Exhibit B refers to motions for directed verdicts and rulings thereon. There was also an affidavit by George L. Bargen, the attorney who defended Potvin in the district court actions.

Respondent filed an answer and objections to the petition. On August 6, 1941, the commission, one commissioner dissenting, denied relators' second petition to vacate. The sole question here for review is whether the commission erred in so doing.

Mason St. 1927, § 4319, permits an award to be set aside and a new hearing to be had only "for cause." That means for good cause; that is, some such cause as fraud or surprise so that, in the exercise of sound judicial discretion, the award should be vacated and a new hearing had. 6 Dunnell, Dig. & Supp. § 10421; Herzog v. City of New Ulm, 199 Minn. 352, 272 N. W. 174; Mark v. Keller, 188 Minn. 1, 4, 246 N. W. 472, 473. It was not the purpose of § 4319 to permit repeated litigation of such issues as are susceptible of best and final decision in the initial hearing, but to permit adjustment of the award in relation to facts subsequently appearing so as "to assure a compensation proportionate to the degree and duration of disability." Mark v. Keller and Herzog v. City of New Ulm, *supra*.

It was held in Hawkinson v. Mirau, 196 Minn. 120, 264 N. W. 438, 265 N. W. 346, that a change in an employee's physical condition so that he becomes unable to work is good cause for vacat-

ing an award and granting a rehearing. *Cf.* Soderquist v. Mc-Gough Brothers, 210 Minn. 123, 297 N. W. 565. Where the petition to vacate is based upon the subsequent discovery rather than the subsequent development of new facts, there is a greater reluctance to grant a rehearing. In such a case the evidence must not be merely cumulative. Smith v. Independent Silo Co. 169 Minn. 96, 210 N. W. 624; Cooper v. Mitchell, 188 Minn. 560, 247 N. W. 805. In addition, and most significant in this case, the petitioner must not have been negligent in his efforts to obtain the newly discovered evidence earlier, or failing there, his neglect, if any, must be for some reason excusable. Meehan v. Mitchell Battery Co. 191 Minn. 411, 254 N. W. 584; Jovanovich v. St. Paul Corrugating Co. 201 Minn. 412, 276 N. W. 741; Seaman Body Corp. v. Industrial Comm. 214 Wis. 279, 252 N. W. 718. It was held in Abraham v. City of Highland Park, 274 Mich. 532, 265 N. W. 454, that to simply show, no matter how convincingly, that no employer-employe relationship existed in fact is not enough. Finally, a large measure of discretion is vested in the commission, and the court will not reverse unless a clear abuse appears. Smith v. Independent Silo Co. 169 Minn. 96, 210 N. W. 624; Cooper v. Mitchell, *supra;* Ogrosky v. Commonwealth Elec. Co. 172 Minn. 46, 214 N. W. 765; Kallgren v. C. W. Lunquist Co. 172 Minn. 489, 216 N. W. 241.

Relators rely upon the testimony of Potvin and Norris Bowman, given at the trial of the district court actions. It does not seem to us that this testimony was properly before the commission. Consequently, it was not for the commission's, nor is it for our, consideration. In any event, it was not before the commission on relators' first petition to vacate. It would appear from the record that respondent's attorneys offered to waive objection to the filing of the proposed transcript when certified if they were given a reasonable opportunity to prepare and serve counteraffidavits, but that relators' attorneys did not file or use the transcript at that time. We do not find in the record a consent to use the transcript on the second petition to vacate or anything to indicate that re-

spondent's attorneys were furnished with a certified copy of it. Respondent incorporated the correspondence between the attorneys in her answer and objections to the second petition. It was, of course, incumbent upon relators to make the record affirmatively show the facts upon which they relied. If, as the printed record here shows, the transcript was not made a part of relators' case, it was not in the case and cannot be considered at all. A finding must be based upon evidence received in the course of the trial. St. Paul & Sioux City R. Co. v. McDonald, 34 Minn. 182, 25 N. W. 57. It is not permissible for the trier of fact to obtain or consider other evidence. Huyink v. Hart Publications, Inc. 212 Minn. 87, 2 N. W. (2d) 552. Claesgens v. Animal Rescue League of Hennepin County, Inc. 173 Minn. 61, 216 N. W. 535. In that view, neither the commission nor this court sitting in review of the commission's decision has any right to consider the evidence in the personal injury cases.

In no view of the case did the commission, nor does this court sitting in review, have any right to consider the transcript against respondent's objection. It is the law that evidence given at a former trial in which the party objecting was not a party is not permissible. Louisville & N. R. Co. v. Scott, 232 Ala. 284, 167 So. 572; Lupino v. Sestanovich, 115 N. J. L. 217, 178 A. 769; 31 C. J. S., Evidence, § 387; Cf. Palon v. G. N. Ry. Co. 135 Minn. 154, 160 N. W. 670; 2 Dunnell, Dig. § 3306a. The rule applies in workmen's compensation cases. The industrial commission is bound by the rule the same as a court. Citizens B. & T. Co. v. Reid Motor Co. 216 N. C. 432, 5 S. E. (2d) 318; Milne v. Sanders, 143 Tenn. 602, 228 S. W. 702. Findings of fact by the industrial commission must be based upon competent evidence. Bliss v. Swift & Co. 189 Minn. 210, 248 N. W. 754; Babich v. Oliver I. Min. Co. 157 Minn. 122, 195 N. W. 784, 202 N. W. 904. Even if the transcript was a part of the record, either by consent or otherwise, there was still a fact question for the commission as to whether relators showed "good cause" for the vacation. The important question presented was whether the deceased was an employe of

Potvin at the time of the injuries which resulted in his death. Aside from the report of accident and settlement agreement in which he (Potvin) and his insurer listed Bowman as Potvin's employe, there was presented to the commission other evidence to the effect that such relationship existed. The affidavit of Robert A. Oliver, publisher of the *Cass County Pioneer,* states that on the day of the accident Potvin told him that Edward Bowman was in his employ. He made a similar statement to A. B. Oliver, judge of probate of Cass county, on the date of the accident. It appears from the affidavits of the Olivers and others that Edward Bowman worked in Potvin's garage; that he sold gas, made repairs, and otherwise carried out Potvin's instructions. Even the testimony of Potvin given at the trial of the district court actions, if competent, leaves confusion as to the relationship between the parties. In his original answer in one of these actions Potvin admitted that Edward Bowman was in his employ at the time of the accident. It was not until after he had been sued in two district court actions for amounts exceeding his liability policy limits that Potvin had a "change of heart." The commission was not required to change its decision every time Potvin changed his mind. Nor was the testimony of Norris Bowman, if competent, so compelling as to require the granting of relators' petition. In any event, it was not controlling on the question of whether relators showed good cause for vacating the award. The insurer made its investigation and concluded that decedent was in the employ of its insured at the time of his death. It so reported to the commission and completed the negotiations for the settlement upon which the award was based. It joined in the first petition to vacate in which it was alleged that the settlement was made because of a "mistake of fact and law." Failing in that, it switched its position and asked relief on the ground that a fraud was perpetrated upon it by its insured. It is apparent that the facts upon which the insurer relied on the second hearing were available to it on the first hearing. There was no abuse of its

discretion on the part of the commission in denying the relief sought as to either relator.

An attorneys' fee of $100 is allowed respondent.

Writ discharged.

STONE, JUSTICE (dissenting).

Not only Potvin's affidavit, made in support of the petition to reopen, but also his testimony at the district court trials, is that long before the accident Norris Bowman, father of the deceased, had leased the repair shop and was operating it at the time of the accident which resulted in the death of his son. Potvin admits that his initial report to his insurer was otherwise and motivated exclusively by his desire to "get some money for Mrs. Bowman," the widow.

The testimony of Norris Bowman, father of the deceased, leaves no doubt that, beginning in 1931, he was a lessee of "the repair shop," first as colessee with one Kaylor and afterwards (Kaylor having withdrawn September 1, 1936) as sole lessee and operator.

After Kaylor left and until October 1, 1940, Norris Bowman had no help. On or about that date, anyway "just lately" and not long before the accident, his son Eddie "was helping" him as an apprentice. His father "tried to teach him the trade, automobile repairing, etc."

On the record as now presented, there is no ground upon which to hold that Edward Bowman was an employe of Potvin. There is no evidence that Potvin had, with the deceased, any agreement of employment, express or implied. There is no evidence of a wage, agreed upon or not, to be paid by Potvin. There is no suggestion of a right to, or exercise of, control of Edward Bowman by Potvin.

Mason St. 1927, § 4289, declares for policies of compensation insurance "that jurisdiction of the employer for any purpose shall be jurisdiction of the insurer, and that the insurer will, in all things, be bound by and subject to the awards rendered against such employer upon the risks so insured."

The decision of the majority of the commission that "the relief sought must be granted or denied as to both petitioning parties" seems to be based largely upon that statute. It properly held that Potvin's initial action, favorable to the widow, was fraudulent as to his insurer, and could not be considered a "mistake of fact" by Potvin. It went on to hold that Potvin being bound, the insurer was equally so.

That theory, so applied, is erroneous. Even though Potvin has bound himself, there is yet lacking an element which, under the statute, is condition precedent to holding the Hardware Mutual Casualty Company as insurer. The essential element so wanting is the presence of an insurer liable as such under the facts. The Hardware Mutual, on the facts as they now appear, was not an insurer at all. It insured only in respect to employes of Potvin, and Edward Bowman appears not to have been an employe. Absent an insurer, the statute has no application. It was not intended as an instrument of vicarious charity. To make it one is to make it, *pro tanto,* unconstitutional. It is hardly due process or equal protection of law to legislate that one litigant shall be cast in judgment solely on the false and fraudulent assertion of another.

An insurance company does not become an insurer automatically or by unilateral action of the insured. It becomes so only by bilateral contract. There is no evidence that the Hardware Mutual was an insurer of the risk here involved. The whole present showing is that it was not.

There may be compensation cases where an employer is held for compensation for which no insurer is liable as such or at all. Washel v. Tankar Gas, Inc. 211 Minn. 403, 2 N. W. (2d) 43, was such a case. This may be another. That is so wherever the contract of insurance does not include the risk. If so, there is as to such risk no insurer and the statute (Mason St. 1927, § 4289) does not apply.

There remains another factor of consideration. Essential to the proper functioning of compensation insurance, so important to industrial security, is honesty and truthful dealing by the insured

with the insurer. The latter is not required to presume that, in case of accident, the insured will deal in falsehood in order to get money from the insurer where it owes none. Insurers should have the right, until the contrary appears, to rely upon the representations of their insured. If, before beginning payment, they must resort to their own independent investigation, the whole procedure will be complicated and payment to the needy dependents unnecessarily delayed.

There is no rule and no precedent that even the judgment of a court, procured through fraud, should not be promptly set aside upon proper showing of such fraud, with opportunity for rehearing and decision on the merits, where the circumstances so require in the interest of justice. That rule applies even where an insurance company happens to be the victim.

In Meehan v. Mitchell Battery Co. 191 Minn. 411, 254 N. W. 584, 585, we reversed an order of the industrial commission denying the employer's petition to reopen the proceeding after an award. The insurer (which had become insolvent) had handled the whole matter, had submitted to the award, and the employer had not participated originally. The evidence for the employe, upon which the award was based, was on the petition to reopen "brought into serious question." The showing in support of the petition to reopen indicated "strongly that the award was based in substantial degree upon false testimony." In consequence, we held it an abuse of discretion not to grant a rehearing. I feel the same way about this case.

There is no reason why Potvin should have the privilege of a rehearing. There is no excuse for his attempt to be charitable with money not his own. But as to the Hardware Mutual Casualty Company, there is no ground, as the case now appears, on which reasonably to deny a rehearing on the merits.

The order of the industrial commission should be affirmed on the petition of Potvin. But on the petition of the Hardware Mutual Casualty Company, it should be reversed, with directions to order a rehearing.

All that I have said presupposes that the testimony taken at the district court trials is properly in the record. The members of the industrial commission, all of them, certainly considered it so, for both the majority and the minority opinions show that the district court testimony was considered. That alone makes it rather late for us to raise the point that the testimony was not in the record.

That aside, there has been no trial on the merits before the industrial commission. We are reviewing its order denying a motion or application for rehearing. I know of no good reason why sworn testimony, such as that now involved, should not be used in support of or opposition to such a motion. In any event, the testimony of Potvin was admissible as an admission.

Finally, Mason St. 1927, § 4313, declares that:

"The commission * * * in making an investigation or conducting a hearing under this act, shall not be bound by common law or statutory rules of evidence * * * and shall make such investigation or inquiry or· conduct such hearing in such manner as to ascertain the substantial rights of the parties."

It is respectfully submitted that, even for a hearing on the merits, that statute very sensibly permits the use of such evidence as we are now considering. It has been subjected to the test of cross-examination and considered by a district judge competent upon a similar issue in the district court. There being no contradiction of it, nothing to discredit it, why shouldn't it be used by an administrative board?