## DOUGLAS D. NIELSEN v. LYSNE CONSTRUCTION, INC., AND ANOTHER.

131 N. W. (2d) 549.

November 13, 1964—No. 39,386.

*Alderson, Catherwood, Kelley & Ondov* and *Glenn E. Kelley,* for relators.

*Taylor, Brown, Meany & O'Brien, Thomas F. Meany,* and *Elmer W. Foster,* for respondent.

SHERAN, JUSTICE.

Certiorari to review a decision of the Industrial Commission vacating an award made pursuant to stipulation.

Since the commission's authority to set an award aside and grant a new hearing "for cause" is clear,[1] the simple question for decision is

---

[1]See, Minn. St. 176.461; Nelson v. C. F. Scully Const. Co. 252 Minn. 518, 90 N. W. (2d) 903; Bomersine v. Armour & Co. 225 Minn. 157, 30 N. W. (2d) 526; Elsenpeter v. Potvin, 213 Minn. 129, 5 N. W. (2d) 499; Jovanovich v. St. Paul Corrugating Co. 201 Minn. 412, 276 N. W. 471.

whether the showing made by respondent in support of his application was adequate to justify the order.

We are satisfied that there was no abuse of discretion. The award vacated, made February 5, 1959, allowed certain medical expenses, disability benefits for healing period, and a lump sum on account of a 10-percent permanent partial disability of the back. It confirmed a stipulation between the parties (made by the employer without conceding the employee's claim that permanent partial disability was caused by accidents occurring on December 12, 1957, and April 23, 1958) based on reports submitted by a qualified neurosurgeon selected by the employee. By these reports, dated June 26, 1958, and October 9, 1958, the employee's attending physician and attorney were informed:

(1) Initial examination disclosed "the usual symptoms and signs of a protruded lumbar disk."

(2) An air myelogram "suggested the possibility of a defect opposite the fourth space on the left side."

(3) On June 25, 1958, "the fourth and fifth lumbar disks were explored without detecting any evidence of compression at either level, and there was no evidence of fragmentation or protrusion of either disk."

(4) Because of the negative findings resulting from this June 25 procedure, the patient's disability could be attributed to "soft tissue injury such as sprain of muscle or ligament" entitling him, in the neurosurgeon's opinion, "to a permanent ten per cent partial disability."

Between the time of the award and April 26, 1962, the employee was unable to do any work which required lifting. On that date he submitted to an operation at the Veterans Administration Hospital, the report of which reads:

"* * * [A] total laminectomy of the L5 and partial L4 was done on the left side. There was a bulging, hard disk up under the ligament of the L5 vertebra adjacent to the interspace. The interspace itself was almost devoid of disk material. The S1 nerve root was very edematous and the L5 nerve root was very tight. The area was

well decompressed. There was no herniated disk found at the L4, 5 level."

As of December 13, 1963, a qualified orthopedist selected by the employee expressed the opinion that the disc and nerve damage observed in connection with the April 26 surgical procedure "is directly related to and exists because of the injuries received by Mr. Nielsen on April 23, 1958." A similar view appears in a letter from the attending physician who cared for Nielsen before and since the June 25, 1958, procedure and was, as of September 1963, convinced that "the protruded disk and nerve damage more recently found at Minneapolis Veterans Hospital had existed in variable degree all the time."

In light of what has apparently developed, we cannot say that the failure of the surgeon, however qualified, to discover disc degeneration on June 25, 1958, eliminates the possibility that the conditions noted on April 26, 1962, were caused, as claimed, by the employment-related accidents. If there is a relationship, the stipulation and award were the result of a mutual mistake of fact and the original award did not justly compensate the injured employee.[2] Whether the relationship between the claimed accidents and the present physical condition of the employee actually exists is to be determined by the referee to which the matter was referred by the commission's order. Our decision is limited to the proposition that the record shows good cause for vacating the original award.

Attorney's fee in the amount of $150 is allowed to the respondent. Affirmed.

---

[2]"As to what constitutes 'cause' sufficient to justify the vacation of an award by the commission under § 176.60 [now Minn. St. 176.461] without abuse of discretion, we have held that the commission has not abused its discretion in vacating an award where it is demonstrated that the original award was * * * made because of mutual mistake of fact; or where subsequent development of new facts establishes that the original award did not justly compensate the injured employe." Bomersine v. Armour & Co. 225 Minn. 157, 161, 30 N. W. (2d) 526, 529.