## EDWARD JONES v. FLOUR CITY ORNAMENTAL IRON WORKS AND ANOTHER.

134 N. W. (2d) 586.

April 15, 1965—No. 39,395.

*Tyrrell, Jardine, Logan & O'Brien* and *Raymond W. Fitch*, for relators.

*Brandt & Soukup*, for respondent.

NELSON, JUSTICE.

Certiorari upon the relation of Flour City Ornamental Iron Works, hereinafter called employer, and Hartford Accident and Indemnity Company, its compensation insurer, to review an order of the Industrial Commission granting a petition to vacate an award upon reconsideration of the petition by the commission.

Edward Jones, the employee, was born in 1905. The record discloses little of his background except that in 1953 he lost the sight of his left eye. Although he later made a claim that the loss was occupational in origin, it was determined that it was the result of glaucoma. Employee was also industrially blind in his right eye. He was employed by employer almost continuously from April 1952 to October 1958, but because of his vision problems there were few jobs he could do and this resulted in his being laid off October 3, 1958. It appears, however, that earlier the same day he and another employee were in the process of turning over a boat when the boat slipped, resulting in an injury to employee's back. He filed a claim petition for this injury with the Industrial Commission on October 22, 1959. His testimony indicates that he "caught" the boat when it slipped and then felt a "stab" in his back and that while he was on his way to the office, after this occurrence, to receive the information that he was being laid off, he first felt pain in his back when going up an incline on employer's premises. Before he went home that day, he told some of employer's officials of the boat incident and the appearance of his back symptoms.

Employee saw Dr. Sam Leonard five times during October 1958 for a back sprain. He was released for full-time work by Dr. Leonard on October 27, 1958. He thereafter applied for unemployment compensation, indicating he was ready, willing, and able to work, and received benefits for a period following. When testifying at a hearing before an Industrial Commission referee in February 1960 employee admitted that he was able to do light work in 1958 after his release by Dr. Leonard and at the time of the hearing.

Beginning January 15, 1959, employee was treated by Dr. W. D. Brown two or three times a month until Dr. Brown decided to hos-

pitalize employee on August 16, 1959. While he was in the hospital Dr. Brown consulted Dr. Harvey O'Phelan concerning employee's condition. A myelogram taken at that time showed "slight general effacement along the L5-S1 level on the right but no evidence of definite herniated disc." Otherwise the test was negative.

According to a letter written by Dr. O'Phelan, employee had been admitted to the hospital for evaluation of pain in his lower back radiating into the left leg. After taking a spinogram Dr. O'Phelan concluded that employee should be treated conservatively and a body cast was applied and employee discharged on August 29, 1959. The cast was removed on September 18, 1959, and the employee instructed to procure a Williams-type back brace. Employee continued under Dr. O'Phelan's care, seeing him monthly, and apparently did well until late in 1959 when he slipped and fell, because of poor eyesight, after a heavy snowfall. He had been working before this fall but since that occurrence his back became worse. Dr. I. F. Schaffhausen examined employee in February 1960 in behalf of employer's insurer. No myelogram was taken at the time by Dr. Schaffhausen, who was unable to find anything objectively wrong with employee's back.

Prior to completion of the hearing a settlement was concluded, to which employee says he agreed after being informed by his counsel that he would be unable to obtain favorable medical testimony. A stipulation describing the terms of the settlement was dictated into the record and an award pursuant thereto was ordered March 2, 1960. Based upon a total payment of $1,000 by employer and its insurer, the award provided for payment of certain medical expenses, attorneys' fees, and the sum of $418.80 for approximately 9 weeks of temporary total disability.

On May 6, 1963, employee filed a petition requesting that the award of March 2, 1960, be vacated and a new hearing granted. The petition and the affidavits filed in support of it alleged that employee entered into the stipulation for settlement upon the advice of counsel after he had been informed by him that he would be unable to obtain the presence and testimony of Dr. O'Phelan, and therefore would have no favorable medical testimony to support his claim, and that

Dr. Schaffhausen was of the opinion that there was no permanent partial disability; that, nevertheless, subsequent to the award employee has often been confined to his bed because of his back condition; that he has since been under the care of Dr. Meyer Z. Goldner and underwent surgery by Dr. Goldner on February 27, 1962, for which he was hospitalized one month; that the surgery was a laminectomy in the course of which a prolapsed intervertebral disc was removed at the L4-5 interspace on the left side; that due to the employee's industrial blindness and personal injury he has been unable to secure employment; that Dr. Goldner has advised employee that he now has a 20-percent permanent partial disability of the spine and that he must from now on avoid bending or lifting activities of a strenuous nature; that it is Dr. Goldner's opinion that there is a causal connection between his injury of October 3, 1958, and his present condition; and that there has been a material change in employee's condition since he entered into the stipulation of settlement under which he received 9 weeks of disability compensation and payment of medical expenses and attorneys' fees.

The petition to vacate the award was denied without dissent by the commission in an order dated September 9, 1963. A second petition to vacate was next heard by the Industrial Commission on December 18, 1963. On January 22, 1964, the commission granted this petition, with one member dissenting. The majority opinion indicates that in determining to vacate the award and grant a new hearing the majority of the commission gave consideration to the fact that a lack of favorable medical testimony caused employee to enter into the stipulation for settlement before completing the hearing and that therefore, in the interest of justice, he should have his "day in court."

Employer and its insurer assert that the Industrial Commission abused its discretion when it granted employee's second petition to vacate the award because the evidence serving as the basis for the first petition to vacate was identical to that presented in the second petition. They argue that the Industrial Commission's position was reversed in the instant case solely because of a change in the personnel of the commission and argue that a court will not reverse its position

on rehearing, after there has been a change in its composition, even though the new member of the court feels that the former member reached the wrong decision, citing Woodbury v. Dorman, 15 Minn. 274 (341); Golden Valley County v. Greengard, 69 N. D. 171, 284 N. W. 423; Gas Products Co. v. Rankin, 63 Mont. 372, 207 P. 993, 24 A. L. R. 294; Cordner v. Cordner, 91 Utah 474, 64 P. (2d) 828; Flaska v. State, 51 N. Mex. 13, 177 P. (2d) 174; and Rohlfing v. Moses Akiona, Ltd. 45 Hawaii 440, 369 P. (2d) 144. They contend that those cases hold that a court can reverse its position only if new grounds have been advanced subsequent to the rendering of the opinion which might reasonably justify reversal.

We do not feel that these decisions, which deal with courts of record, govern the proceedings here, which are governed by the Workmen's Compensation Act.

■ Minn. St. 176.461, authorizing the Industrial Commission to set aside awards and grant new hearings, states:

"Except where a writ of certiorari has been issued by the supreme court and the matter is still pending in that court or where as a matter of law the determination of the supreme court cannot be subsequently modified, the commission, for cause, *at any time after an award,* upon application of either party and not less than five days written notice to all interested parties, may set the award aside and grant a new hearing and thereon determine the matter on its merits and make such findings of fact, conclusions of law, and award or disallowance of compensation or other order as the pleadings and the evidence produced before it and the provisions of this chapter shall in its judgment require." (Italics supplied.)

It is clear from the language of § 176.461 that the Industrial Commission has continuing jurisdiction so long as cause may be shown to set aside an award. While employee might well, in the instant case, have delayed longer than he did before filing his second petition to vacate the award, the Industrial Commission, whatever its composition, clearly could consider this petition.

The legislature has seen fit to repose in the chief executive of this state the duty of appointing the members of the Industrial Commis-

sion—the present statute, § 175.02, having been enacted in 1921—and to provide that not more than two commissioners shall belong to the same political party. If the argument advanced by employer and insurer were to prevail, appointment of a new commissioner would so restrict the application of § 176.461 that in many cases it would no longer protect employees' rights and the commission would be ousted of its continuing jurisdiction to order a rehearing.

■ This court said in the recent case of Jacobson v. Uptown Transfer & Storage Co. 268 Minn. 336, 341, 129 N. W. (2d) 41, 44: "The granting of a petition to reopen under this statute rests in the sound discretion of the Industrial Commission." Many of the applicable rules have also been stated in Elsenpeter v. Potvin, 213 Minn. 129, 132, 5 N. W. (2d) 499, 501, where this court said:

"Mason St. 1927, § 4319 [predecessor of Minn. St. 176.461], permits an award to be set aside and a new hearing to be had only 'for cause.' That means for good cause; that is, some such cause as fraud or surprise so that, in the exercise of sound judicial discretion, the award should be vacated and a new hearing had. * * * It was not the purpose of § 4319 to permit repeated litigation of such issues as are susceptible of best and final decision in the initial hearing, *but to permit adjustment of the award in relation to facts subsequently appearing so as 'to assure a compensation proportionate to the degree and duration of disability.'* " (Italics supplied.)

■ With respect to the scope of this court's review of decisions of the Industrial Commission, it has been a longstanding principle that the commission's decision is final unless it can be said that there was an abuse of discretion. Jacobson v. Uptown Transfer & Storage Co. *supra.* We have said repeatedly that whether there is sufficient cause to vacate or reopen an award based on a stipulation for final settlement rests in the sound discretion of the Industrial Commission. Anderson v. Sandberg Poultry Farm, 263 Minn. 360, 116 N. W. (2d) 585.

It appears from the record that employee entered into the stipulation for settlement February 25, 1960, pursuant to which the award was issued by the commission on March 2, 1960. Dr. Goldner's findings

shortly before the surgery performed February 27, 1962, were that employee had a prolapsed intervertebral disc at the L4-5 interspace on the left side, which was surgically removed. Clearly, this constituted substantial newly discovered evidence not available when the stipulation was entered into.

This court has previously held in a case presenting a similar fact situation that the Industrial Commission was in error in refusing to vacate an award. In Leland v. St. Olaf Lutheran Church, 213 Minn. 34, 4 N. W. (2d) 769, a clergyman injured his back in a fall on the steps of the church office. After a partial hearing he accepted an award of $350 based upon a stipulation. Thereafter the commission denied three petitions to vacate the award. Subsequent to issuance of the initial award in the Leland case, a surgical operation was performed and positive physical findings were made that the ligamenta flava at the fourth and fifth lumbar interspaces had thickened and were abnormally fibrotic. The court said (213 Minn. 38, 4 N. W. [2d] 771):

"If we were to disregard the findings of Dr. Love, who operated on relator's back in March 1940, we should be compelled to hold that the conclusions of the commission were final, in view of the conflict in the opinions of the medical men as to the nature and extent of relator's injury. * * * But it seems to us that the commission failed to give due significance to the findings of Dr. Love. * * * It must be remembered that no medical testimony was presented to the referee at the original hearing. There is nothing in the testimony before the referee to indicate injury to the spine except that of relator's unsupported complaints; in fact there appears to have been no suggestion of spine injury until Dr. Henry's examination in January 1940. It is not likely that the referee would have approved a settlement for $350 if the evidence had disclosed the existence of a spinal injury."

We reversed the order of the Industrial Commission and remanded the matter for rehearing.

In Bomersine v. Armour & Co. 225 Minn. 157, 161, 30 N. W. (2d) 526, 529, we said:

"As to what constitutes 'cause' sufficient to justify the vacation of an award by the commission under § 176.60 [predecessor of § 176.461] without abuse of discretion, we have held that the commission has not abused its discretion in vacating an award where it is demonstrated that the original award was based upon fraud, concealment, deceit, or surprise in connection with the making thereof; or where it was made because of mutual mistake of fact; *or where subsequent development of new facts establishes that the original award did not justly compensate the injured employe.*" (Italics supplied.)

■ In Nielsen v. Lysne Const. Inc. 269 Minn. 464, 131 N. W. (2d) 549, the latest case on this subject, we held that an award of compensation was properly vacated upon a showing that it was entered pursuant to a stipulation based on the assumption that the employee had sustained a soft tissue injury such as sprain of muscle or ligament in the lumbar area, but a subsequent operation disclosed a ruptured intervertebral disc which, according to the opinions of experts offered by the employee, was the cause of the disability on account of which the award was made.

As in the Lysne case, we do not adjudicate the merits of employee's claim. We go no further than to hold that the commission did not abuse its discretion in vacating the award and granting a hearing on the merits.

Respondent is allowed $250 attorneys' fees in this court.

Affirmed.