JACOB M. MATTSON, BY HIS GENERAL GUARDIAN,
ANNA MATTSON, v. THOMAS ABATE,
d.b.a. TAB CONSTRUCTION COMPANY, AND ANOTHER.

156 N. W. (2d) 738.

February 16, 1968—No. 40,619.

*Robb, Robb & Van Eps,* for relators.

*Robins, Davis & Lyons* and *Arnold M. Bellis,* for respondent.

PETERSON, JUSTICE.

The issue for decision is whether the Industrial Commission abused its discretion in granting respondent employee's petition to vacate a settlement award and granting a rehearing. The facts of the case, somewhat abbreviated for the purpose of this opinion, are not in dispute. The employee, Jacob M. Mattson, was severely injured on February 13, 1958, while employed by relator Tab Construction Company. The employer's liability under the Workmen's Compensation Act is admitted. The nature of the employee's injury has never been disputed, although the present issue arises out of mistaken assumptions that the injury would be less disabling than it has proved to be.

The employee's injury occurred in a fall from scaffolding on a construction project. He sustained a severe compound, comminuted, and depressed skull fracture in the right parietal area, with cerebral concussion, considerable laceration of the brain substance, and marked tearing of the coverings of the brain. He was treated by Dr. R. L. Merrick, a neurosurgeon selected by relator, who performed immediate surgery. The lacerated brain tissue was debrided, the torn brain coverings were repaired, the skull fracture was reduced, and, at a later date, a metal plate was inserted over the skull defect. The employee's speech was adversely affected by the injury, and he underwent 2 months of special training at the St. Paul Rehabilitation Center, where he was under the care of Dr. W. H. Hollinshead.

A stipulation of settlement[1] was entered into between the parties on

---

[1] This stipulation was in the usual form and recited that it was a full and final settlement of any and all claims which the employee "now has or might hereafter acquire against this Employer and Insurer arising out of said personal injury for compensation for either temporary total, temporary partial, permanent partial or permanent total disability." The stipulation provided for a lump-sum payment to the employee of $9,000, without interest deduction, less $1,500 attorney's fees, in addition to the $5,670 theretofore paid the employee as weekly compensation under the statute; in addition, it was stipulated that further medical, hospital, and other related benefits under the statute were not to be precluded. The potential value of the employee's claim was noted by Referee Robert E. Faricy in a report to the Industrial Commission: "This man is but 45 years of age with a potential life span of

July 28, 1960, and was approved by the Industrial Commission on September 9, 1960. The commission's approval was undoubtedly influenced by two opinions then before it. First, Dr. Merrick had reported on July 5, 1960, the result of his most recent examination of the employee on June 23, 1960, at which time he concluded:

"* * * His main problem is going to be his inability to do moderately heavy types of work in that the drive, which is necessary in such cases, will undoubtedly remain lacking. This is the most common difficulty in this type of injury. * * * I do not believe that any further therapy is indicated and would estimate that he has a *general bodily disability of approximately 30 per cent*. This, however, *may decrease slightly* over the period of the next few years." (Italics supplied.) [2]

Second, Victor Lapakko, secretary and business representative of the Building Laborers & Hod Carriers Union Local No. 132, the labor union of which the employee was a member, expressed his opinion that the employee would shortly be able to get employment in the industry in which he had been employed. This opinion appears to have been based on Dr. Merrick's stated prognosis. The approval of the settlement by the Industrial Commission was, as it stated in an accompanying memorandum, influenced by the vocational outlook expressed by Lapakko:

"It appears from the record that the employe's difficulty following his injury in all probability may be greater than anticipated. *Approval of the settlement as agreed to by the parties was made only after the Commission was assured by Victor Lapakko * * * that the employe would be*

approximately 20 years. * * * If the brain damage renders him unable to pursue a gainful occupation, he may be a permanent and total case with a probable compensation value of from $45,000 to $50,000."

[2] It appears Dr. Hollinshead examined the employee on April 28, 1960, in connection with his treatment by the St. Paul Rehabilitation Center, and again in July 1963 and January 1964. But it does not appear that the 1960 report was before the commission at the time of its award. Dr. Hollinshead first found that the employee had chronic brain damage and that he could possibly handle very simple mental and physical work; he was later of the opinion that the employee must be considered totally and permanently disabled.

*able to return to some type of gainful employment in the very near future."* (Italics supplied.)

The vocational and medical expectations proved unduly optimistic. Although placed in an employment situation in September 1960, the employee was unable to perform his duties. He attempted to perform other work also, but was unable to do so. Except for these brief attempts, he has been continuously unemployed and unemployable. Dr. Merrick concluded in a report of November 4, 1964, that the employee "is permanently and totally disabled." [3]

Petitioner filed his petition to vacate the award and for rehearing on August 8, 1966. The petition was granted on October 13, 1966, on the ground that "the settlement was improvident and should not have been approved." [4] The memorandum accompanying the order stated:

"Victor E. Lapakko, business representative of Laborers' Union #132, in 1960 assured the Commission that the employee was employable and would be furnished work he could do in his disabled condition. On that promise, the Commission with apparent reluctance approved the settlement and issued its award. The promised work for the employee did not

---

[3] Dr. Merrick's report of July 5, 1960, stated that the employee had had no blackouts or dizziness suggestive of any convulsive disorder and that he was taking no medication; but on May 24, 1962, Dr. Merrick prescribed medication for convulsive seizures because the employee was complaining of dizzy spells and passing out. He was hospitalized in April 1964, because of "his continued complaint of headaches, ataxia, occasional seizure, difficulty in speaking, and clumsiness of the left side of the body." The employee was rehospitalized on March 4, 1966, and on April 7, 1966, upon Dr. Merrick's advice, the employee's wife was appointed his general guardian to take charge of his personal affairs.

[4] The commission "reconsidered its denial on December 14, 1964 of a similar petition." The previous petition to vacate the award had been denied, with Commissioner James Pomush dissenting. A writ of certiorari was issued out of this court on December 22, 1964, to review that order, but the writ was discharged on July 7, 1965, because of relator's default for more than 30 days in the service and filing of the record and brief. The Industrial Commission's order now under review was issued by the commission without dissent.

materialize. Mr. Lapakko now, in effect, says he was mistaken and regrets that his representation made in good faith may have been responsible for the Commission's action. Although the factual situation now is virtually the same now as it was almost six years ago, the Commission feels impelled to vacate the award and permit the employee to make claim for further compensation. The employee has a prima facie case of compensation disability, there being no medical opinions adverse to employee's claim of total disablement."

1. The commission has the statutory authority to set aside an award for cause,[5] including an award based upon stipulation of the parties.[6] The commission exercises discretion both in approving a settlement stipulation [7] and in subsequently determining whether an award based on the

---

[5] Minn. St. 176.461 provides: "Except where a writ of certiorari has been issued by the supreme court and the matter is still pending in that court or where as a matter of law the determination of the supreme court cannot be subsequently modified, the commission, for cause, at any time after an award, upon application of either party and not less than five days written notice to all interested parties, may set the award aside and grant a new hearing and thereon determine the matter on its merits and make such findings of fact, conclusions of law, and award or disallowance of compensation or other order as the pleadings and the evidence produced before it and the provisions of this chapter shall in its judgment require."

[6] Minn. St. 176.521 provides: "Subdivision 1. An agreement between an employee or his dependent and the employer or insurer to settle any claim for compensation under this chapter is valid where it has been executed in writing and signed by the parties, and the commission has approved the settlement and made an award thereon.

"Subd. 2. Except for the amount of compensation, the commission shall approve a settlement only where its terms conform with this chapter.

"The commission shall exercise discretion in approving or disapproving a proposed settlement.

"The parties to the agreement of settlement have the burden of proving that the settlement is reasonable, fair, and in conformity with this chapter.

"Subd. 3. Notwithstanding any provision in the agreement of settlement to the contrary, the commission may set aside an award made upon a settlement, pursuant to this chapter."

[7] § 176.521, subd. 2, *supra*.

stipulation should be set aside.[8] The basic statutory objective for which this discretion is invested is "to assure a compensation proportionate to the degree and duration of disability." Elsenpeter v. Potvin, 213 Minn. 129, 132, 5 N. W. (2d) 499, 501. Although the commission's discretion is not without limit, it is instinct with considerable latitude.

2. Relator's main point of contention is that the commission's stated ground for setting aside the award was that it was "improvident," and that mere improvidence is not "cause" within the meaning of the statute. There is more to the instant case, however, than a mere after-the-fact determination that the employee would have received more money if he had not stipulated for settlement. Any award set aside on petition of the employee does, of course, have that element of improvidence in settling for inadequate compensation. There is more to the case, too, than the settling of a claim for less than the potential maximum as a compromise of contested issues, the resolution of which after hearing could be adverse to the employee.

We think that a finding of cause was implicit, if not expressed, in the commission's order and memorandum. This is plainly a case of a grave mistake based on mistaken assumptions of fact. Although the facts of this case arguably do not clearly establish a *mutual* mistake of fact in the strict sense of including relators, we think the record strongly suggests that all the parties did labor under the same mistaken assumptions of fact, if only because there was little reason for either party to submit the proposed settlement for the approval of the commission unless they expected that the employee would be returned to gainful employment. Elements of changed conditions, also cause for vacating an award, are perhaps pres-

---

[8] See, for illustration: Stokes v. J. L. Shiely Co. 278 Minn. 354, 154 N. W. (2d) 404; Jones v. Flour City Ornamental Iron Works, 271 Minn. 42, 134 N. W. (2d) 586; Nielsen v. Lysne Const. Inc. 269 Minn. 464, 131 N. W. (2d) 549; Jacobson v. Uptown Transfer & Storage Co. 268 Minn. 336, 129 N. W. (2d) 41; Anderson v. Sandberg Poultry Farm, 263 Minn. 360, 116 N. W. (2d) 585; Bomersine v. Armour & Co. 225 Minn. 157, 30 N. W. (2d) 526; Elsenpeter v. Potvin, 213 Minn. 129, 5 N. W. (2d) 499; Leland v. St. Olaf Lutheran Church, 213 Minn. 34, 4 N. W. (2d) 769; Ogrosky v. Commonwealth Elec. Co. 172 Minn. 46, 214 N. W. 765; Ronstadt v. Minor, 152 Minn. 10, 187 N. W. 703.

ent as well, even though they would relate to facts existent at the time the settlement was approved and only subsequently discovered. The case so viewed would be subject to the principle stated in Guptill v. Conlon Const. Co. 239 Minn. 185, 189, 58 N. W. (2d) 264, 267:

"It has frequently been held that the development of new facts with reference to an injury subsequent to an award * * * or even the subsequent discovery of facts in existence but unknown at the time the award was made * * * is sufficient to justify the vacation of an award, although in the latter situation there is greater reluctance to hold that the commission abused its discretion in denying a motion to vacate."

The ultimate issue in cases of this nature is whether the commission abused its discretion either in granting or denying a petition to set aside an award. Whether we have sustained the commission's discretion in denying a petition[9] or in granting one,[10] we have not by such decision necessarily held that it would have been an abuse of discretion for the commission to have reached the opposite result. We cannot conclude under the circumstances of the instant case that the granting of the petition was without cause and, therefore, an abuse of discretion. Respondent is allowed $250 attorneys' fees in this court.

Affirmed.

---

[9] E. g., Bomersine v. Armour & Co. 225 Minn. 157, 30 N. W. (2d) 526.
[10] E. g., Nielsen v. Lysne Const. Inc. 269 Minn. 464, 131 N. W. (2d) 549.