JESSE WALKER v. MIDWEST FOODS AND ANOTHER.

197 N. W. 2d 430.

April 28, 1972—No. 42999.

*Raymond W. Fitch,* for relators.

*Loren M. Barta,* for respondent.

Heard before Knutson, C. J., and Murphy, Otis, and Peterson, JJ.

PER CURIAM.

Relators, Midwest Foods, and its compensation insurance carrier, Federated Mutual Implement & Hardware Insurance Company, seek review of an order of the Workmen's Compensation Commission vacating a compensation award, made May 28, 1969, on the basis of a stipulation of the parties, and allowing the case to be reopened pursuant to Minn. St. 176.461.

Employee, Jesse Walker, who is presently 64 years of age and unemployed, filed a workmen's compensation claim in December 1967 for a hip injury, allegedly caused by a fall which had occurred nearly 3 years earlier on February 10, 1965. Pursuant to his report of the injury, employee was examined by Dr. D. H. Dewey of Owatonna. Dr. Dewey was employee's family doctor but had examined injured employees for Midwest Foods on several occasions as well. Dr. Dewey made no analysis of employee's condition but instead referred him to a specialist in Mankato, Dr. D. C. Meredith, who examined him on November 20, 1967.[1] Dr. Meredith found no causal connection between the injuries which employee complained of and the fall which he reported to have taken at work. At employee's request, his records were then transferred to another Owatonna physician, Dr. Kenneth G. Henry. In Dr. Henry's report of March 11, 1969, he stated that employee had a 65-percent disability of his right hip and lower extremity. That report contained no estimate of causality, although employee and Dr. Henry apparently discussed the possibility of a causal connection between the fall in February 1965 and his hip injuries.

The stipulation itself did not recite any medical opinion about causality, although it does incorporate the medical reports of both Dr. Meredith and Dr. Henry. The only statement on causality, appearing

---

[1] Walker had been seen by Dr. Meredith on a former occasion in November 1965, when he complained of a left shoulder injury; he did not complain of any hip or leg injury at that time. He had also been treated by Dr. Robert Schmidt for a vascular problem in his neck in January 1966. He did not indicate any hip or leg injury at that time either.

in Paragraph VII, recites that the employee alleged a causal connection between a fall at work and the damage suffered to his hip. It is apparent from employee's affidavit in support of the motion to reopen the matter that he was unclear as to what Dr. Henry's opinion was on the causation issue. He states there:

"At the time I signed the papers the insurance company did get a report from Dr. Henry and they told me that there was no connection between the accident I had at the Canning Company and my disability. I never saw any report from Dr. Henry that said that. The only report I ever saw of Dr. Henry's said that my disability was 65%, but it didn't say anything about the exact cause of it. So because the adjusters told me Dr. Henry's report showed no connection with my accident, I believed it and signed the papers."

The commission said, in the memorandum order allowing reopening, that "from the employee's conversations with Dr. Henry, he, the employee, was of the opinion that Dr. Henry was of the opinion that the employee's hip condition was related to his fall." But, at the time the commission approved the stipulation and entered the first award, it had before it only Dr. Meredith's, and not Dr. Henry's, statement as to causation,[2] and therefore was unable to consider all the evidence on causation.

Shortly after Dr. Henry's report, employee entered into a stipulation with relators, agreeing to accept $1,806.75 as a final settlement of his claim. That amount represented an 18.25-percent permanent partial disability to his right hip and leg. Employee, who had an eighth grade education, entered into this stipulation without benefit of private counsel. He did consult with Mr. Leigh J. Gard, an attorney for the Industrial Commission. In addition to corresponding by mail, they met on occasion in Attorney Gard's office in St. Paul, but there was no consultation between them on the advisability of settling the claim at that point, nor did Gard favor the settlement when he was advised of it.

Employee at no time discussed his claim with private counsel until after the stipulation had been approved by the commission. He had been discouraged from obtaining private counsel by the representatives of Federated Mutual who processed his claim. They counseled him that

[2] Dr. Henry, in an affidavit filed in support of employee's motion to reopen the claim, stated as to the causation issue: "That disability is, I believe causally related to an accidental injury to his right hip which he declares to me he sustained at his place of employment in February of 1965 while opening some meat barrels."

it would be to his advantage to handle the matter himself rather than pay legal fees and court costs. Subsequent to the approval of the stipulation by the commission, employee engaged private counsel, Mr. Loren Barta of Owatonna, who filed a petition pursuant to Minn. St. 176.461, to reopen the matter. The commission determined: "In the interest of justice, the employee should have the further opportunity of having his 'day in court.'"

Minn. St. 176.461 states:

"Except where a writ of certiorari has been issued by the supreme court and the matter is still pending in that court or where as a matter of law the determination of the supreme court cannot be subsequently modified, the commission, for cause, at any time after an award within eight years from the date compensation was last paid, upon application of either party and not less than five days after written notice to all interested parties, may set the award aside and grant a new hearing and thereon determine the matter on its merits and make such findings of fact, conclusions of law, and award or disallowance of compensation or other order as the pleadings and the evidence produced before it and the provisions of this chapter shall in its judgment require."

This right to reopen under the statute applies to an award made pursuant to a stipulation such as this, as well as to one made after an evidentiary hearing. Mattson v. Abate, 279 Minn. 287, 156 N. W. 2d 738 (1968); Bomersine v. Armour & Co. 225 Minn. 157, 30 N. W. 2d 526 (1947).

In determining whether or not the reopening was "for cause," we have noted that it is a well-settled rule in Minnesota that "[w]hether there exists sufficient cause to justify vacation of award ordinarily rests in the sound discretion of the commission." McGuire v. Viking Tool & Die Co. 258 Minn. 336, 343, 104 N. W. 2d 519, 525 (1960). And as we said in the Mattson case (279 Minn. 292, 156 N. W. 2d 741):

"* * * The basic statutory objective for which this discretion is invested is 'to assure a compensation proportionate to the degree and duration of disability.' Elsenpeter v. Potvin, 213 Minn. 129, 132, 5 N. W. (2d) 499, 501. Although the commission's discretion is not without limit, it is instinct with considerable latitude."

The fact that this claim has never been fully litigated is important. We have said that reopening should not be allowed in every case since "[i]t was not the purpose of the statute to permit repeated litigation of fact issues once determined on competent evidence." Jacobson v. Uptown Transfer & Storage Co. 268 Minn. 336, 340, 129 N. W. 2d 41, 44

(1964). This is not to indicate that the commission should always grant a petition for reopening, where the original award is based on a stipulation, but only that this is a factor which should be considered.

We then turn to the question of whether there was "cause" to reopen. The term "for cause," as it appears in Minn. St. 176.461, has been defined by this court in several cases. In the Bomersine case, we said (225 Minn. 161, 30 N. W. 2d 529):

"As to what constitutes 'cause' sufficient to justify the vacation of an award by the commission under § 176.60 [3] without abuse of discretion, we have held that the commission has not abused its discretion in vacating an award where it is demonstrated that the original award was based upon fraud, concealment, deceit, or surprise in connection with the making thereof; or where it was made because of mutual mistake of fact; or where subsequent development of new facts establishes that the original award did not justly compensate the injured employee."

And in the Jacobson case the court said (268 Minn. 340, 129 N. W. 2d 44):

"* * * 'Cause,' as used in this section, means 'good cause,' that is, some such cause as fraud or surprise or some factor unknown at the original determination that would lead to a conclusion that the original award was incorrect."

And, finally, in Mattson v. Abate, 279 Minn. 287, 292, 156 N. W. 2d 738, 741, where both the parties and the commission had an erroneous opinion as to the ability of the employee to find substitute employment, we allowed a reopening, saying:

"Relator's main point of contention is that the commission's stated ground for setting aside the award was that it was 'improvident,' and that mere improvidence is not 'cause' within the meaning of the statute. There is more to the instant case, however, than a mere after-the-fact determination that the employee would have received more money if he had not stipulated for settlement. Any award set aside on petition of the employee does, of course, have that element of improvidence in settling for inadequate compensation. There is more to the case, too, than the settling of a claim for less than the potential maximum as a

[3] Minn. St. 1949, § 176.60, was a predecessor statute to the present Minn. St. 176.461, which established the same test for reopening as we now have. Minn. St. 1949, § 176.60, was repealed in 1953 (L. 1953, c. 755, § 83) when the present provision was enacted.

compromise of contested issues, the resolution of which after hearing could be adverse to the employee."

The case at bar is similar. All the facts concerning the causation of employee's injury were not before the commission at the time the settlement was approved. It is unclear whether the employee himself realized the import of the opinion of Dr. Henry as to causation when placed vis-a-vis the testimony of the specialist, Dr. Meredith. These facts, coupled with what appears to be an inadequate settlement for the injuries sustained, constitute "cause" as it is used in § 176.461.

It is also apparent that the representatives of the insurance carrier discouraged a claimant who could not adequately negotiate for himself from obtaining private legal counsel. They now oppose the reopening of the case and a full evidentiary hearing, at which the employee will be represented by legal counsel. We are of the view that the injured workman, unfamiliar with the law, should have a full and fair opportunity to secure rights due him under the Workmen's Compensation Act. The reopening statute should, and must, be available for this purpose.

The order of the Workmen's Compensation Commission to vacate its original award based on the stipulation and to reopen the claim for an evidentiary hearing, if necessary, is affirmed.

Respondent is allowed $250 attorneys' fees.

Affirmed.

MR. JUSTICE TODD, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.