Kermit KENDRICK, Appellant/Cross–Appellee,

v.

BAILEY VAULT COMPANY, INC., Appellee/Cross–Appellant,

and

Ronald W. May, Administrative Law Judge, and Workers' Compensation Board, Appellees.

Nos. 96–CA–0984–WC, 96–CA–1125–WC.

Court of Appeals of Kentucky.

April 25, 1997.

Jonathan Stanley, Lexington, for Appellant/Cross–Appellee.

Christopher R. Cashen, Michael A. Vescio, Lexington, for Appellee/Cross–Appellant.

Before GUIDUGLI, HUDDLESTON and SCHRODER, JJ.

## OPINION

SCHRODER, Judge.

This petition and cross-petition for review of a decision of the Workers' Compensation Board (Board) stems from a settlement agreement approved by Administrative Law Judge Richard H. Campbell, Jr. on April 12, 1993, and a subsequent motion to set it aside as unconscionable.

Kermit Kendrick (Kendrick) sustained a work-related injury to his back on June 30, 1992. He was treated by, and underwent surgery at the hands of, Dr. Richard Mortara.[1] Thereafter, Dr. Mortara assessed 8% functional impairment and opined that Kendrick would be physically restricted for one year. He also averred that Kendrick had reached maximum medical improvement. Kendrick, unassisted by counsel, and the insurance carrier began settlement negotiations. The record evinces that offers were made by the carrier which were rejected by Kendrick, who, in turn, made a counteroffer which the carrier accepted: a lump sum payment of $13,000.00 plus two years of medical expenses. Kendrick testified that he understood that after two years following the date of approval of the settlement passed, he would no longer be entitled to medical benefits arising from the injury. The settlement agreement also included language that the claim against Bailey Vault Company, Inc. (Bailey Vault) was dismissed with prejudice and that Kendrick waived any right to ever reopen the claim. Kendrick discovered over time that his condition did not, in fact, improve as predicted by Dr. Mortara. Rather, he required additional surgery. Consequently, he retained counsel and filed a motion to set aside the settlement agreement as unconscionable. The motion was granted to the extent that the claim was reopened for the taking of proof.

Administrative Law Judge Ronald W. May (ALJ) issued an Opinion and Order on September 14, 1995, which provides a thorough and clear explanation of the facts in this case. The ALJ ruled that the dismissal with prejudice and the waiver of reopening were not enforceable. Otherwise, he found no fraud on the part of the carrier and held the settlement agreement valid:

> To the extent a claimant undertakes to represent himself in this type of proceeding, he does so at his own peril. I find no evidence of fraudulent or unconscionable negotiation of the settlement on the part of the defendant-employer, its insurance carrier or the attorney for the insurance carrier. Plaintiff was an active participant in the settlement negotiations and, as far as the elements of the amount paid and future medicals, the settlement was based upon the last offer made which was made by plaintiff. Plaintiff is bound by the terms of the settlement agreement to the extent those terms are approved and are not unenforceable for other reasons.

The Board, referring to 3 Arthur Larson, *The Law of Workmen's Compensation* § 81.50 (1995), determined that the finding of the absence of fraud was supported by substantial evidence. The Board also relied on *Zeigler Coal Co. v. Hopson,* Ky.App., 726 S.W.2d 309 (1986) and *Stambaugh v. Cedar Creek Mining Co.,* Ky., 488 S.W.2d 681 (1972) in concluding that a claim can be reopened whether it was dismissed with or without prejudice.

We first address the cross-petition of Bailey Vault. Bailey Vault maintains that a workers' compensation claim may be dismissed with prejudice with the ALJ's approval and that a claimant may waive his right to

---

1. After the injury, Kendrick presented to the emergency room, which referred him to a neurosurgeon, who, in turn, referred Kendrick to Dr. Mortara.

reopen. We disagree, and, in fact, adopt the Board's well-written opinion on these issues:

We further conclude that the ALJ's determination that the language 'dismissed with prejudice' and the 'waiver of the right to reopen' were both unenforceable [sic]. The ALJ determined that both parties were under a mutual mistake with respect to the ability of Kendrick to be in a reasonable position physically to return to gainful employment within a certain period of time as reflected in Dr. Mortara's verbal and written communication. The ALJ also found it relevant that ALJ Richard H. Campbell, Jr., in this Order approving the settlement made no mention whatsoever of the claim['s] being dismissed with prejudice or that Kendrick had forever waived any right to reopen under our Workers' Compensation Act. In addition, he found that there was no consideration paid in exchange for dismissal of the case with prejudice and/or a waiver of the right to reopen; and that these provisions, as urged by Bailey Vault, were violative of other public policy considerations under our Act.

In *Schulte v. Workmen's Compensation Board of Kentucky*, Ky.App., 571 S.W.2d 108 (1978), the Court held:

Although compromise and concessions may be involved in the parties deciding to reach a settlement, once the Board [now ALJ] acts upon the settlement it is an award within the meaning of KRS 342.125. Since it is an award, it is subject to reopening provided a cause as set forth in KRS 342.125 is available.

*See also American Standard, Inc. v. Stephen*, Ky.App., 565 S.W.2d 158 (1978). There is also a strong policy against dismissal of workers' compensation claims with prejudice. In *Kentucky Workmen's [Compensation] Board v. Haungs*, Ky., 373 S.W.2d 724 (1963), the Court stated:

The obvious policy and purpose of [KRS 342.265] is to discourage the making of settlements except under the protective supervision of the Board [now ALJ]. It requires very little perspicacity to recognize at once that this objective would be utterly defeated if claimants were permitted simply to dismiss with prejudice as a matter of right. Legitimate, Board-approved settlements would soon disappear in the wake of bootleg agreements carried out under cover of voluntary dismissals.

We do not hold, of course, that the claim cannot be dismissed voluntarily. But the Board, as a representative of the public, has a substantial interest beyond that of a mere nominal party [citations omitted], and in this capacity it has the authority to prevent such a dismissal's having the effect of a permanent and irrevocable waiver.

373 S.W.2d at 724–725.

In *Stambaugh v. Cedar Creek Mining Co.*, Ky., 488 S.W.2d 681 (1972), a claimant's occupational disease claim had been dismissed on the merits. He moved to reopen a year later and the Board denied the motion as '*res adjudicata*.' The Court held this to be error to the extent that the claimant was able to demonstrate a reasonable preliminary showing of one or more prescribed conditions warranting reopening under KRS 342.125. The decision in *Stambaugh, supra*, was reviewed subsequently by the Court of Appeals in *Z[ei]gler Coal Company v. Hopson*, Ky. App., 726 S.W.2d 3[0]9 (1986). Therein, the Court concluded that the dismissal in *Stambaugh* was 'with prejudice[.'] However, the Court of Appeals in *Hopson*, ruled that the Board can reopen a workers' compensation claim whether it was dismissed with or without prejudice. In light of the foregoing analysis, this Board attaches no particular significan[ce] to dismissal 'with prejudice' when an award has, in fact, been entered by the ALJ.

What is clear[,] as the ALJ determined[,] is that the parties entered into the settlement with an understanding as to compromising the permanent partial disability resulting from the injury and reducing the medical expenses and liability therefore beyond the two year condition established in the settlement. From our review of the evidence, it is also abundantly clear that the ALJ's determination that the 'dismissal with prejudice' and 'waiver

of the future reopening' was based on a mutual mistake. That finding is supported by substantial evidence and constitutes one of the prerequisite conditions as intended under KRS 342.125.

Accordingly, we affirm the Board's handling of these two issues.

■ Kendrick espouses that the settlement agreement should be set aside due to either intentional or constructive fraud based on the assurances of medical recovery by Dr. Mortara and the insurance carrier, and the carrier's failure to inform Kendrick that he was waiving his right to reopen his claim. Since we have affirmed the determination that the ALJ properly set aside the settlement clauses concerning waiver of the right to reopen and dismissal with prejudice, we focus on whether the reliance on Dr. Mortara's opinion constituted fraud.

The ALJ and the Board focused on Kendrick's active participation in the settlement negotiations to conclude that there was no fraud involved. We believe the proper focus should have centered around the parties' reliance on Dr. Mortara's opinion, and find it curious that while the ALJ found mutual mistake based on the reliance on Dr. Mortara's medical report to set aside the waiver of the right to reopen and the dismissal with prejudice language, he appeared to overlook it when determining whether to set aside the settlement agreement.

■ As noted by the Board, constructive fraud arises from the breach of a legal duty which the law would pronounce fraudulent because of its tendency to deceive others, violate confidence, or injure public interest. *See Wood v. Kirby*, Ky., 566 S.W.2d 751 (1978). In § 81,51(b) of Larson's treatise, the example of constructive fraud given is "the honest but entirely erroneous opinion, expressed by the insurance representative and insurance doctor in the agreement negotiations, that claimant's condition would clear up in sixty days, when that opinion induced claimant to acquiesce in the agreement." *Id.* at 15–1194.89. Normally, if the claimant relied on the representations of his own physician, fraud is not found. An exception to this rule, however, occurs when the insurance

company uses that doctor's opinion in reaching the settlement. In such a case, the physician is considered an agent of the carrier, and his medical misrepresentations are imputed to the carrier. The agency relationship and the claimant's reliance on the medical report form a sufficient basis to set aside the settlement. *Rodriguez v. American Home Assur. Co.*, 735 S.W.2d 241 (Tex.1987).

Perhaps more apropos is § 81.52(b), which addresses reopenings based on mutual mistake. Professor Larson criticized the "chance-taking" approach of states such as North Carolina which decline to set aside settlement agreements even when medical complications appear after the settlements are finalized. Such states reason that in settling their claims, claimants risk future uncertainties, medical relapses, and complications. Professor Larson suggested that the sounder approach is one in line with the workers' compensation goal that injured workers receive the benefits to which they are entitled. *Messer v. Drees*, Ky., 382 S.W.2d 209 (1964). An example is the Minnesota case of *Mattson v. Abate*, 279 Minn. 287, 156 N.W.2d 738 (1968), in which the Court "set aside a settlement based on the mistaken assumption by everyone on both sides that claimant would be able to return to work and perform his old duties." § 81.52(b) at 15–1194.133–134.

It is undisputed that both sides relied on Dr. Mortara's opinion that Kendrick had reached maximum medical improvement, was 8% functionally impaired, and would have restrictions for only one year. In fact, Dr. Mortara was incorrect. Clearly, this scenario amounts either to constructive fraud or mutual mistake. In either case, Kendrick has presented a compelling case for setting aside the settlement agreement.

Kendrick also argues that the Board should not have ignored his contention that even if the settlement agreement were not set aside, he had the right to proceed separately against the Special Fund. Kendrick's motion to set aside was properly treated as a motion to reopen. The matter *sub judice* was simply to determine whether there was a basis for setting aside the settlement agreement and whether the case could be re-

opened; it was not on the merits. Therefore, the issue of joining the Special Fund was premature.

Given our decision, however, we offer the following guidance upon remand. We believe that *Yocom v. Helm*, Ky.App., 562 S.W.2d 97 (1978) and *American Standard, Inc. v. Stephen*, Ky.App., 565 S.W.2d 158 (1978) permit the Special Fund to be joined for the first time in the reopening of this claim. These cases treat the Special Fund as subject to the same standards that apply to the employer regarding timeliness on a reopening.

Finally, we decline Bailey Vault's invitation to impose sanctions against Kendrick pursuant to KRS 342.310. Since we have found Kendrick's petition for review meritorious, it follows that it was not unreasonable.

For the foregoing reasons, the decision of the Board is affirmed in part, reversed in part, and remanded to the ALJ to set aside the settlement agreement and institute further proceedings consistent with this opinion.

All concur.