George **LANDON**, Respondent,

v.

**DONOVAN CONSTRUCTION COMPANY, et al.**, Relators.

No. 48241.

Supreme Court of Minnesota.

Aug. 4, 1978.

Chadwick, Johnson & Bridell, Minneapolis, for relators.

Robins, Davis & Lyons and Arnold M. Bellis and John G. Brian, III, St. Paul, for respondent.

**PER CURIAM.**

Writ of certiorari to review an order of the Workers' Compensation Court of Appeals vacating an award based upon a settlement. The issue is whether the court of appeals abused its discretion in making the order. We affirm.

The court of appeals has statutory authority to set aside the award for cause. Minn.St. 176.461 and 176.521, subd. 3. In *Wollschlager v. Standard Const. Co.*, 300 Minn. 550, 220 N.W.2d 346 (1974), we stated

that cause for so doing exists in cases involving fraud, mistake, newly discovered evidence, and a substantial change in the employee's condition. In all cases the basic concern in determining whether sufficient cause exists to set aside an award is to assure a compensation proportionate to the degree and duration of disability. *Wollschlager v. Standard Const. Co. supra; Bohnhoff v. Allan Engineering Co.*, 304 Minn. 587, 231 N.W.2d 554 (1975); *Elsenpeter v. Potvin*, 213 Minn. 129, 5 N.W.2d 499 (1942). Moreover, we have recognized that the discretion of the court of appeals, although not without limit, is "instinct with considerable latitude." *Mattson v. Abate,* 279 Minn. 287, 292, 156 N.W.2d 738, 741 (1968); *Elsenpeter v. Potvin, supra.* In the circumstances presented by this case, we find no abuse of discretion.

Employee, a 63-year-old painter, sustained an employment-related injury to his right leg and hip in October 1973. By April 1974, he was forced to stop working and underwent hip replacement surgery in June 1974. He sustained a permanent partial disability to his leg, ultimately rated at 25 percent, for which relators paid him $3,944.50 on April 24, 1975, and $986.70 June 30, 1975. They also paid employee for temporary total disability for 50 weeks, amounting to $4,495.76, but discontinued payments thereafter on the ground he had refused to accept work he could do.

On July 16, 1975, employee filed with the Workers' Compensation Division a proposed settlement purporting to "fully, finally and completely settle all past, present and future claims" for compensation, other than future medical expenses, for the sum of $12,500. The proposed settlement recited employee's claim that he is permanently and totally disabled. · It also stated:

"It is the claim and contention of the employer and insurer, on the other hand, that the employee is capable of working at a sustained work capacity within the physical restrictions of 25% permanent partial disability of the right leg, that the employee has not demonstrated a good faith effort to find employment within his physical limitations, that the employee has not demonstrated a good faith effort to avail himself of rehabilitation measures which would restore him to a working capacity, and that he is not entitled to further workmen's compensation benefits.

"It is stipulated and agreed that the employee refuses to enter the open labor market to find employment which would be available to him within his physical limitations; that he has been tendered vocational rehabilitation assistance and rejects further assistance; that further, the present, personal inclination and desire of the employee is to leave the State of Minnesota and enter the uncompensated service of the Lord for evangelism inasmuch as he is almost sixty-five (65) years old and of retirement age."

The settlement was approved by Raymond Adel, deputy commissioner of the Workers' Compensation Division, and James Otto, chief attorney for the division, the day after it was filed. An award to employee of $12,500 based thereon was made.

In April 1977 employee petitioned to vacate the award, alleging that he had had no legal representation when he agreed to settlement, was still disabled at that time, had never refused suitable work, and remains totally disabled; that the foreclosure of his claim for permanent total disability had been premature and was contrary to the policy of the court of appeals; and that he had received temporary total disability benefits for a total of 189 weeks out of a possible 350. Relators opposed the petition, so the court of appeals referred the matter to a compensation judge for a hearing on the circumstances surrounding the settlement.

The evidence presented at this hearing established that in July 1975 employee undertook without legal representation or advice to negotiate the settlement with the employer's insurer. He testified that he did so because he was in need of money and had understood after talking with the insurer's claims supervisor that the settlement was "partial" and the $12,500 repre-

sented 20 or 21 percent of his disability. Employee admitted he was told by the insurer's attorney who drafted the settlement that he "had only medical and that is all." He said he did not read the settlement and "had no explanation of what was going to happen to the other 79 percent of disability."

After the settlement was executed, employee himself took it to the Workers' Compensation Division. He testified that Deputy Commissioner Adel took it from him and told employee he would be informed if it was approved. He said he was so informed when he later telephoned to ask about it.

Deputy Commissioner Adel testified that he had no specific recollection of the matter. He said that it was his responsibility and that of Mr. Otto to review proposed settlements which foreclose claims for permanent total disability; that their usual procedure is to hold a hearing to ascertain whether the employee understands the potential value of his claim and the effect of the settlement; and that the proceeding is usually transcribed by a reporter whose record of it is placed in the employee's compensation file. He said that if a reporter is not available, he and Mr. Otto make notes of the discussion which are placed in the file. Employee's file contains no record or notes of such a proceeding. Deputy Commissioner Adel also said that a potential claim for permanent total disability is not usually settled when the fact of injury is admitted (as it was in this case) and the issue is whether an employee can obtain and perform work in his disabled condition. He also said that an order approving a settlement representing payment for future disability usually provides that the award be placed in a bank account subject to limitations on withdrawal, which was not done here.

Employee testified that, contrary to the recitals in the settlement, he had not received an offer of employment he could perform and had not declined vocational rehabilitation. He said that he had thought of doing evangelistic work for lack of an alternative. He also said that he had not received the payments for permanent partial disability, but this testimony was conclusively impeached. The insurer's attorney testified that he had explained the terms of the settlement to employee, and the witness "definitely recalled" that employee read it.

Employee admitted that he had discussed his case with a Workers' Compensation Division attorney after the discontinuance of his temporary total disability payments, had once talked to Deputy Commissioner Adel about it, and had once asked Mr. Otto about its worth, but insisted that he had received little assistance through these contacts and had relied on the insurer "to be honest with me" because on another occasion he had settled a claim against an insurance company without legal assistance.

The court of appeals ordered the award vacated in the interest of justice after concluding that employee had been subjected to economic coercion by an apparently improper discontinuance of compensation, had not been represented nor properly advised by counsel, and had negotiated a settlement that on its face appeared unfair.

▮ In urging that this order was an abuse of the discretion vested in that court, relators contend primarily that employee's testimony was not believable. It is the function of the court of appeals, however, to assess a witness' credibility, and we will not substitute our judgment on this issue. As stated, employee was impeached on some aspects of his testimony, but his testimony about the execution and approval of the settlement was consistent and has support both in the absence of evidence that the usual procedure designed to protect an employee from accepting an improvident settlement was followed and in the facts that the settlement was unusual in foreclosing any claim for permanent total disability and in failing to place restrictions on the award.

We are required also to reject relators' contention that no economic coercion was present. The seriousness of employee's original injury, his inability to obtain employment, his age, and his lack of other

income clearly permitted an inference of some degree of economic coercion. Moreover, employee's testimony permits the inference that he was mistaken about the effect of the settlement, which clearly did not provide him compensation proportionate to the degree and duration of his disability. We conclude that the court of appeals did not abuse its discretion in vacating the award.

Employee is awarded attorneys fees of $350.

Affirmed.