Edward MAURER, a.k.a. Red
Maurer, Respondent,

v.

BRAUN'S LOCKER PLANT, et al.,
Relators (50156),

Woody's Meat Market, et al.,
Relators (50163),

T. H. Schaefer & Sons, Inc., et al.,
Employer and Insurer,

and

State Treasurer, Custodian of the Special
Compensation Fund.

Nos. 50156, 50163.

Supreme Court of Minnesota.

July 3, 1980.

Van Eps & Gilmore and Donald W. Anderson, Minneapolis, for Braun's Locker Plant et al.

Hansen, Dordell & Bradt and J. Mark Catron, St. Paul, for Woody's Meat Market et al.

Pearson & Lanoue and Richard P. Pearson, St. Cloud, for respondent.

SCOTT, Justice.

Certiorari to review an order of the Workers' Compensation Court of Appeals vacating a January 7, 1964, award made pursuant to a stipulation of settlement. We remand for further proceedings.

In November 1954 employee, a butcher for Braun's Locker Plant, fell while carrying a hog carcass and injured his back, resulting in the protrusion of a disc. He had considerable trouble, but was able to work in succeeding years. He began working for relator Woody's Meat Market in 1960, continuing to have back pains until March 17, 1963, at which time he was hospitalized and underwent surgery for removal of a disc. Although he did not sustain a specific injury while working for Woody's, he claimed that his work caused strains and aggravations of his condition. Following the filing of a claim petition against Braun's and Woody's, the parties entered into a settlement which resulted in an award approved on January 1, 1964, by Referee James Duffy. The award provided that employee's medical expenses amounting to $1,047.68 would be paid and that employee should receive 21.4 weeks of temporary total disability at the weekly rate of $45, amounting to $952.32, of which $238.08 was paid directly to employee's attorney. In addition, the award provided that when these payments were made:

[I]t shall constitute full, final and complete settlement of any and all claims that the employe may have against the above named employers and insurers as a result of his alleged personal injury of on or about November 1, 1954 or any subsequent injuries or aggravations sustained while in the employ of the employers named herein.

The stipulation underlying the award recited that both employers denied primary liability and denied having received notice of the claimed injuries. It also stated that employee agreed to accept the payments set out above—

in full, final and complete settlement of any and all claims of any nature whatsoever arising from said alleged injury of

on or about November 1, 1954, or any subsequent injuries, strains or aggravations while in the employ of the employers named herein, including all claims that he might have to this date, and also including all further claims for disability in the future of any character, either partial or total, temporary or permanent in character, and for [medical expenses], retraining, interest or any other type of benefits that might accrue to him in the future * * *.

The stipulation also provided that:

By entering into this stipulation the employee agrees and acknowledges that he has been fully advised by his attorney, and fully understands his rights under the Workmen's Compensation Laws of Minnesota and further, that he understands this settlement is based upon a denial of primary liability by the employers and insurers herein and is intended to be a final disposition of any claims that he may have to date and also of all future eventualities, the parties recognizing that said employe may sustain further disability in the form of temporary total or partial, or permanent partial or total, and that he may in the future require further medical care and attention for the condition referred to in this stipulation.

On May 20, 1969, employee suffered a back injury while in the employ of T. H. Schaefer & Sons, Inc. Following this incident he had a laminectomy in 1969 and another one in 1970. He contends that the 1969 injury was an aggravation of the preceding ones covered by the 1964 stipulation and award. He filed a claim petition against Schaefer in May 1978 seeking compensation for temporary total disability from May 20, 1969, to November 1976 and for an unspecified amount of permanent partial disability. He was then informed that it would be necessary to have the prior award set aside before that claim petition could be considered. In February 1979 he filed a petition seeking to vacate the award, which was supported by his affidavit in which he averred that at the time he agreed to the settlement he was not apprised that

"his rights to pursue any aggravation of the injury may have been foreclosed forever"; that he was told that he would not be able to pursue claims against Braun's and Woody's again "for any claim to his back while he still worked for them"; that he was mistaken as to the seriousness of the 1954 and 1963 injuries and had been informed that the 1963 operation "would remedy his problems completely"; that he had retained an attorney shortly after the 1969 injury, but that attorney failed to initiate any proceeding on his behalf; and that, as a result of his pain and disability he had resorted to alcohol.[1] Relators opposed vacation of the award, claiming that employee had shown no cause for its vacation; that there was no medical evidence attributing employee's current symptoms to the former injuries and no medical evidence that any change in his condition was due to those injuries. They also opposed vacation on the ground that because of the lapse of time great inequity would result from vacating the award.

The parties made similar arguments at the hearing on the petition to vacate the award. Employee presented no medical evidence showing any causal relationship between his present disability and the injuries which had been the subject of the 1964 award. He subsequently forwarded hospital records relating to the various operations and referring to a "recurrent" disc protrusion and a medical opinion from employee's present doctor stating that "there is a very strong probability of the 1954 and 1963 injuries, so to speak, setting the stage for the recurrence in 1969."

The court of appeals issued an order granting the petition to vacate "in the interest of justice." The order was accompanied by a memorandum in which the court recognized that the stipulation for settlement had provided for full, final and complete settlement of any claims, present and future. The court pointed out, however, that the authority of a referee to approve

settlements in 1964 was dictated by then-Rule 10F of the Workmen's Compensation Commission:

Referee shall consider stipulations for settlement of cases assigned to them except those involving death claims or the issue of permanent total disability, which settlements together with documents or exhibits shall be referred to the commission by the referee with a detailed memorandum of the facts and his recommendation.

The court said that the referee had exceeded his authority and it was therefore vacating the order approving the settlement.

Both Braun's and Woody's and their insurers obtained certiorari.

The issue presented for our review is whether the court of appeals abused its discretion in ordering that the award be vacated.

■ Pursuant to Minn.Stat. §§ 176.461 and 176.521, subd. 3 (1978), the Workers' Compensation Court of Appeals may vacate a settlement award "for cause." In making its determination in this regard, the Court of Appeals' primary objective is "to assure a compensation proportionate to the degree and duration of disability." *E. g., Eigen v. Food Producers, Inc.,* 308 Minn. 435, 240 N.W.2d 559, 560 (1976); *Elsenpeter v. Potvin,* 213 Minn. 129, 132, 5 N.W.2d 499, 501 (1942). The Court of Appeals has broad discretion in deciding whether to vacate an award, and its authority has been repeatedly referred to by this court as being "instinct with considerable latitude." *E. g., Landon v. Donovan Const. Co.,* 270 N.W.2d 15, 16 (Minn. 1978); *Bennett v. Hoiseth Motor Sales,* 302 Minn. 534, 535, 224 N.W.2d 148, 149 (1974); *Mattson v. Abate,* 279 Minn. 287, 292, 156 N.W.2d 738, 741 (1968). Yet, its discretion is not without limit, and some caution should be exercised in vacating settlement awards so as to encourage employer-insurers to settle claims. *See, Bennett, supra.*

1. Employee underwent treatment of alcoholism in 1974 and became a chemical dependency counselor in December 1976.

442

This court has recognized four general grounds for establishing "cause" to vacate a settlement award: (1) fraud; (2) mistake; (3) newly-discovered evidence, and (4) substantial change of employee's condition. *E. g., Landon, supra*; *Wollschlager v. Standard Const. Co.*, 300 Minn. 550, 220 N.W.2d 346 (1974). Employee urges us to recognize a fifth category for demonstrating cause, *i. e.*, the referee's lack of authority to approve the settlement. As part of his contention, employee asserts that the language of Rule 10F does not allow a referee to approve any portion of a settlement which includes stipulation as to death claims or permanent total disability. Even assuming the correctness of employee's argument, we conclude that, under the facts of the instant case, this does not provide an adequate basis for vacating the award in question.

 It seems clear that the import of Rule 10F is that referees do not have the authority to approve settlements where death claims or permanent total disability benefits are genuinely in dispute. Here, neither at the time of the 1964 award nor as a result of the 1978 claim petition were death claims made or total permanent disability benefits sought. Accordingly, such matters were not, and are not at the present time, areas of controversy. Thus, even if Rule 10F was violated in a technical sense, such an error, when viewed in light of the purpose of Rule 10F, is not of a sufficient magnitude to establish cause for vacating the award in question. To conclude otherwise would place form far ahead of substance.

Finally, we are aware that the Court of Appeals was requested to set aside the award on other grounds, such as mistake and substantial change of the employee's condition. Whether these or other theories were a basis for the court's decision to vacate the award "in the interest of justice," is unclear from the record. Consequently we remand to the Court of Appeals for clarification in this regard. Also, upon

remand we urge the court to consider Minn. Stat. § 176.131 (1978) and cases such as *Marsolek v. Miller Waste Mills*, 244 Minn. 55, 69 N.W.2d 617 (1955); *Koski v. Erie Min. Co.*, 300 Minn. 1, 223 N.W.2d 470 (1973); and *Lease v. Pemtom, Inc.*, 305 Minn. 6, 232 N.W.2d 424 (1975),[2] as they may apply to the propriety of vacating the subject award.

Remanded for further proceedings.

2. Section 176.131 and these cases relate to employers' liability where successive injuries are