## STANLEY R. LEASE v. PEMTOM, INC., AND OTHERS. STATE TREASURER, CUSTODIAN OF SPECIAL COMPENSATION FUND.

232 N. W. 2d 424.

July 25, 1975—Nos. 44937, 44965.

*Sahr, Kunert, Tambornino & Soshnik* and *John L. Tambornino,* for relators Pemtom and its insurer.

*Jardine, Logan & O'Brien* and *Denis Opsahl,* for relators Pierson and its insurer.

*Warren Spannaus,* Attorney General, *Peter Sipkins,* Solicitor General, and *Kenneth McCoy,* Special Assistant Attorney General, for respondent state treasurer.

Heard before Rogosheske, Peterson, and Kelly, JJ., and considered and decided by the court en banc.

ROGOSHESKE, JUSTICE.

Certiorari to review a workmen's compensation decision

(1) apportioning liability equally for payment of disability and medical benefits to the employee, Stanley R. Lease, resulting from an aggravation of a preexisting physical impairment to his back against two successive employers-insurers, Pemtom, Inc., and its insurer, Aid Insurance Company, (Pemtom) and John L. Pierson Company and its insurer, Fireman's Fund American Insurance Company, (Pierson);

(2) ordering reimbursement from the custodian of the Special Compensation Fund for payment to be made by Pierson, the second employer-insurer; and

(3) assessing, in addition to disability benefits payable to the employee, attorneys fees pursuant to Minn. St. 176.191 equally against both Pemtom and Pierson.

Since Minn. St. 1971, § 176.131, our applicable second-injury statute, as construed by Koski v. Erie Mining Co. 300 Minn. 1, 223 N. W. 2d 470 (1973), does not authorize the special fund to obtain apportionment from the first employer, we are compelled to reverse and relieve Pemtom, the first employer, of its liability for disability and medical benefits. Although we hold that Minn. St. 176.191 authorizes assessment of attorneys fees against two employers-insurers in favor of an employee where compensation benefits are payable to him and the dispute is solely between them as to which is liable for payment, the record concerning the basis for and the amount of the assessment is inadequate, and this issue must be remanded for reconsideration by the commission.

The employee, while employed by Pemtom as a carpenter laborer, sustained his first work-related injury to his lower back on November 6, 1967. The injury necessitated herniated disc surgery at the L5-S1 level. Pemtom voluntarily paid disability benefits for 31 1/5 weeks of temporary total disability and for 15-

percent permanent partial disability plus medical expenses. Under statutory provisions then applicable, this physical impairment was automatically registered with the commission.[1] After the employee recovered in April 1968, he secured employment with Pierson, who had knowledge of his prior injury and surgery and his limitation to engage in light work. During the first 2 years of employment he put Formica on countertops, requiring a minimum of straining. In the fall of 1970 his duties were changed to loading trucks and carrying panels, involving increased lifting and heavy work. During the period from January 1971 through May 11, 1971, he sustained his second injury in the form of an aggravation of his back condition, which, by June 16, required a spinal fusion. Pierson filed a first report of injury acknowledging notice of it on June 7 but denied liability. The employee's claim petition seeking benefits from both Pemtom and Pierson was filed August 4, 1971. Both denied liability and Pierson's petition to join the special fund was granted. The compensation judge who heard the matter on January 19, 1972, found that the employee was "clearly entitled to benefits against one or the other employer" for temporary total disability; that the dispute as to which was liable for payment of benefits was essentially one between Pemtom and Pierson; and that the failure to pay benefits constituted "unreasonably and vexatiously delayed payment of compensation benefits." The judge fixed the amount of disability benefits to be paid the employee and the medical expenses payable to specified claimants plus interest; apportioned liability 80 percent to Pemtom and 20 percent to Pierson; and additionally assessed attorneys fees of 25 percent of the disability benefits equally against both employers. The contingent fee agreement between employee and his attorney for legal services performed in proceeding before the compensation judge of 25 percent of the disability payments awarded was approved, and reimbursement to Pierson from the special fund, except for

---

[1] Minn. St. 1971, § 176.131, subd. 4.

the additional attorneys fees assessed and interest on the medical expenses, was also ordered.

Both Pemtom and Pierson appealed to the commission, challenging the percentage of apportionment of their liability and the assessment of attorneys fees. The commission modified the percentage of liability to 50 percent to each employer. It also set aside the compensation judge's finding of unreasonable and vexatious delay, finding instead that no application for payment of benefits pending a determination of the respective liability of Pemtom and Pierson was made by either the employee or employers as authorized by § 176.191. Further, the commission approved the attorneys contingent fee and affirmed the assessment of 25-percent attorneys fees payable to the employee, declaring the assessment to be authorized by § 176.191. Allowance of attorneys fees for services in proceedings before the commission were deferred pending "determination of reasonable attorneys fees" at a later hearing.[2]

■ The issue of apportionment of liability is controlled by Koski v. Erie Mining Co. *supra*, where we interpreted and applied Minn. St. 1971, § 176.131, our second- and successive-injury statute. There, we held that where the employee sustains two or more work-related injuries and the employer who pays benefits for the last injury is entitled to reimbursement from the special fund, no apportionment is to be made against the employer at the time of the first injury. The only distinction between Koski and this case is that Koski involved a single employer and a disability "substantially greater" because of the pre-

---

[2] Although the record is far from clear, we assume that the commission intended to approve assessment of the 25-percent attorneys fees over and above the disability benefits payable to the employee but desired to evaluate its effect on the amount of attorneys fees to be allowed for services rendered upon appeal from the decision of the compensation judge at a later hearing. Hearings on this issue were scheduled and twice postponed and finally vacated when the commission, on February 8, 1974, denied Pemtom's petition for rehearing and amendment of its decision.

existing impairment and this case involves two successive employers and a disability that would not have occurred "except for" the preexisting impairment. These differences afford no basis for refusing to apply the rationale of the Koski case, where we said (300 Minn. 7, 223 N. W. 2d 473):

"The language of Minn. St. 1969, § 176.131, which is applicable here, is clear, unambiguous, and unequivocal. This statute not only makes no reference to apportionment but the language used negates any inference of intent that apportionment be applied. Where a person with an existing physical or mental impairment which hinders his employability is hired or retained and incurs an industrial injury causing 'disability that is substantially greater, because of a preexisting physical impairment, than what would have resulted from the personal injury alone,' our statute declares that the employer, save for a limited liability, 'shall be reimbursed from the special compensation fund.' We fail to see how the plain language of the statute is susceptible of any construction that would write into it the principle of equitable apportionment."

Thus to apportion 50 percent of liability to Pemtom in this case would in effect permit apportionment against the first employer in whose employ the employee sustained his first injury resulting in his preexisting physical impairment. Nor do we believe the commission was correct in denying Pemtom the benefit of the Koski decision on the basis of Sandal v. Tallman Oil Co. 298 Minn. 264, 214 N. W. 2d 691 (1974). Although the commission's original decision predated Koski, postdecision proceedings to amend the commission's decision were pending after Koski was decided, and Pemtom preserved its right of certiorari review of the commission's refusal to apply it. Sandal, therefore, does not preclude its application to this case.

■ The more significant issue is whether the commission was authorized by § 176.191 to assess attorneys fees to be paid the

employee in addition to disability benefits. The statute provides in part:

"Where compensation benefits are payable under this chapter, and a dispute exists between two or more employers or two or more insurers as to which is liable for payment, the commissioner of the department of labor and industry, compensation judge, or commission upon appeal may direct that one or more of the employers or insurers make payment of the benefits pending a determination of liability.

"When liability has been determined, the party held liable for the benefits shall be ordered to reimburse any other party for payments which the latter has made, including interest at the rate of five percent per annum. *The claimant may also be awarded a reasonable attorney fee, to be paid by the party held liable for the benefits.*" (Italics supplied.)

Although we have not had occasion to interpret and apply this provision, the commission has on at least two reported occasions awarded attorneys fees to an employee where the occurrence of a work-related injury and the amount of benefits are not in dispute but the employee is drawn into litigation because of an employers-insurers' dispute as to which is liable for payment. Malecha v. Pany Hardware Co. 21 Minn. W. C. D. 145 (1960); Zdrubek v. Pillsbury Citizens Service, Inc. 22 Minn. W. C. D. 221 (1960). Even though the employee may be receiving benefits under the temporary order clearly invited by § 176.191, the employee's pragmatic need for counsel in proceedings to resolve an employers-insurers' dispute was well stated by the commission in Malecha (21 Minn. W. C. D. 147):

"When a matter is set for hearing before a Referee of the Industrial Commission, even to determine issues after [a temporary] order is issued under section 176.191, the Referee has the power and the duty to determine all issues in the matter as between any of the parties. It is even possible that the facts as then presented to him may show no benefits due the petitioner.

But what is far more probable, is that the insurers, primarily disputing various phases of liability among themselves, will endeavor to minimize the employee's disabilities insofar as it affects their respective company's liability. This may have an effect upon the employee's rate of compensation, dependent upon when the particular personal injury arose, and even as to the total extent of the employee's injuries—such as percent of permanent partial disability, temporary total disability or permanent total disability. * * * For insurer's counsel to infer that once the insurer's dispute brought the petitioner into litigation they would protect and assert the petitioner's rights, is to give unrealistic enthusiasm to the maternal instincts of any defendant. Such enthusiasm is not shared by either past litigants or trial attorneys."

But Pemtom contends that, as a matter of statutory construction, the word "claimant" does not include an employee for the statutory language assumes his right to benefits, and therefore only an employer who has paid benefits under a temporary order which should have been paid by another employer is entitled, along with reimbursement and interest, to be awarded attorneys fees.

The manifest weakness of Pemtom's argument is the practical necessity, under our adversary system of justice, of an employee's representation where both employers unconditionally deny liability, for when that occurs he becomes an involuntary participant in what may not be solely an employers' dispute. If during the proceeding it is established that any of the employee's rights are disputed, the legislature could hardly have chosen a more appropriate pluralistic word than "claimant" to express its intent that the commission may assess attorneys fees not only for the benefit of a nonliable employer but for an employee as well. The obvious purpose of the provision is to supplement the statutory duty of an employer factually and legally liable for benefits to commence payment without an order of the commis-

sion, §§ 176.021, subd. 3, and 176.221, subd. 1, and to ensure that an employee clearly entitled to benefits should not suffer a delay in payment because of a dispute as to liability for payment between two or more employers. The commission's discretionary authority to impose the sanction of assessing attorneys fees for an unjustified delay of payment of benefits not only appears to be a legislative recognition of the employee's problem of incurring legal expense to obtain benefits due but is consistent with the general objectives of the Workmen's Compensation Act and its statutory provisions governing the commission's approval, allowance, or assessment of attorneys fees.

With respect to the problem of an injured employee's legal expense, the observation made at 3 Larson, Workmen's Compensation, § 83.11, is appropriate:

"The basic rule applicable to a compensation case is the same as that for any other kind of case: Each party pays his own lawyer, win or lose. * * *

"When, however, this practice is superimposed upon a closely-calculated system of wage-loss benefits, a serious question arises whether the social objectives of the legislation may to some extent be thwarted. The benefit scales are so tailored as to cover only the minimum support of the claimant during disability. There is nothing to indicate that the framers of the benefit rates included any padding to take care of legal and other expenses incurred in obtaining the award."

Consistent with the general social objectives, when an injured employee privately retains an attorney to petition for benefits, the division of workmen's compensation of the Department of Labor and Industry, the compensation judge, or the commission, under § 176.081, is vested with supervisory authority to approve the attorneys fees charged the employee. Where an appeal is taken from a decision of a compensation judge to the commission and benefits are awarded, § 176.511, subd. 3, expressly authorizes the commission to include in the benefits awarded "a rea-

sonable attorney's fee."[3] Supplementing § 176.191 is § 176.225. This section, upon notice and hearing, authorizes the division of workmen's compensation or the commission on appeal or this court to impose a penalty of up to 25 percent of the compensation awarded where an employer has asserted frivolous claims or defenses, or unreasonably or vexatiously delayed payment, or neglected or refused to pay or intentionally underpaid compensation.

These provisions are surely designed to advance the social objectives of preserving so far as possible the payment of full wage-loss benefits to an injured employee whose rights against the employer can only be vindicated by trial on the merits before the compensation judge, appeal to the commission, and review by this court, and to reduce his recovery of benefits by imposing upon him no more than such share of litigation expense as will deter initial commencement of wholly unfounded or frivolous claims. Thus, as it is not uncommon that an employee sustains successive work-related injuries while employed by two or more employers, the legislature concluded that, if successive employers want to pursue their rights to litigate liability for payment of benefits, the commission in its discretion shall be empowered to assess attorneys fees payable to the employee to reimburse the employee for costs incurred for attorneys' services in protecting not only his right to but the amount of benefits owed by the disputing employers.

■ That is what the compensation judge and the commission sought to do in this case. The difficulty is that we cannot on this record approve either the judge's or the commission's decision. We express no disagreement with the evidentiary support for the finding that there was no dispute as to the occurrence of the second injury or Pierson's notice or knowledge of it and the employee's entitlement to temporary total disability benefits. Pier-

---

[3] Subd. 5 of this section authorizes this court, where upon appeal an award of benefits is affirmed or ordered, to also include attorneys fees.

son's denial of liability on the claim that it had no notice of the second injury within 90 days thereafter, as required by § 176.141, is wholly without merit. Apart from some evidence suggesting contrary findings, its first written report of injury filed June 14, 1971, obviously supports the finding that Pierson had proper notice. However, the employee, who filed no brief in this court, neither moved to impose a penalty for vexatious delay under § 176.225 nor, following the compensation judge's finding, applied for assessment of attorneys fees under § 176.191. Further, Pemtom, which had no knowledge of the second injury until the employee's claim petition and whose liability is now discharged, was held liable for an equal amount of the attorneys fees assessed despite Pierson's statutory responsibility for commencing payment of benefits and, under § 176.131, subd. 1, obligation to pay 52 weeks of monetary benefits and $2,000 in medical expenses as a precondition to reimbursement for any excess from the special fund.

Finally, the commission's order for postdecision hearing to determine the amount of reasonable attorneys fees to be awarded in view of the assessment under § 176.191 would most likely not have been vacated had the commission properly ruled on the issue of apportionment.

Reversed in part and remanded for reconsideration of assessment of attorneys fees pursuant to § 176.191.