MAXWELL COMMUNICATIONS, et al., Petitioners, Plaintiffs (C4–92–1822, C5–92–1926, C9–92–2092), Appellants (C8–92–2259),

v.

WEBB PUBLISHING COMPANY, et al., Defendants (C4–92–1822, C5–92–1926, C9–92–2092), Respondents (C8–92–2259),

and

ADVANCED UNITED EXPRESSWAYS, et al., Petitioners, Appellants (C4–92–1822), Plaintiffs (C5–92–1926, C9–92–2092, C8–92–2259),

v.

MINNESOTA INSURANCE GUARANTY ASSOCIATION, Respondent (C4–92–1822), Defendant (C5–92–1926, C9–92–2092, C8–92–2259),

and

KEY NISSAN, INC., et al., Petitioners, Plaintiffs (C4–92–1822, C5–92–1926, C8–92–2259), Appellants (C9–92–2092),

v.

MINNESOTA INSURANCE GUARANTY ASSOCIATION, Defendant (C4–92–1822, C5–92–1926, C8–92–2259), Respondent (C9–92–2092),

and

MAXWELL COMMUNICATIONS, et al., Petitioners, Plaintiffs (C4–92–1822, C5–92–1926, C9–92–2092), Appellants (C8–92–2259),

v.

QUEBECOR, et al., Defendants (C4–92–1822, C5–92–1926, C9–92–2092), Respondents (C8–92–2259),

and

DONLAR CONSTRUCTION CO., et al., Petitioners, Plaintiffs (C4–92–1822, C9–92–2092, C8–92–2259), Appellants (C5–92–1926),

v.

MINNESOTA INSURANCE GUARANTY ASSOCIATION, Defendant (C4–92–1822, C9–92–2092, C8–92–2259), Respondent (C5–92–1926).

Nos. C9–92–2092, C8–92–2259, C4–92–1822 and C5–92–1926.

Supreme Court of Minnesota.

June 17, 1994.

Barbara Hech, Larsen, Hech, Klimek & Powell, Minneapolis, for Maxwell Communications.

Steven Mattaini, Paul D. Reuvers, Erstad & Riemer, P.A., Minneapolis, for Advanced United Expressways, et al.

Larry J. Peterson, Larry J. Peterson & Assoc., St. Paul, for Key Nissan, Inc., et al.

Kevin P. Hiehey, Bassford, Hecht, Lockhart, Truesdell & Briggs, Minneapolis, for Donlar Const. Co., et al.

Barbara Burke, Cousineau, McGuire & Anderson, Minneapolis, for Minnesota Ins. Guar. Ass'n.

## OPINION

KEITH, Chief Justice.

On petition for further review, we consider whether a workers' compensation liability insurer's equitable contribution claim is a "covered claim," enforceable against the Minnesota Insurance Guaranty Association under Chapter 60C of the Minnesota statutes when the association undertakes the administration of claims against an insolvent workers' compensation liability carrier. We hold that it is not.

The facts giving rise to this appeal are simple and undisputed. The parties stipulated that four employees sustained an injury compensable under the Minnesota Workers' Compensation Act and received benefits from their respective employer's workers' compensation liability insurer, that the employees had previously sustained a compensable injury while working for either a different employer or for the same employer who was then insured by a different workers' compensation liability insurer, and that the insurers on risk for the prior injury had since become insolvent.

In August of 1988, National Union Fire Insurance Company (accompanied by its insured employer Advance United Expressways) filed a petition for reimbursement or contribution with the Workers' Compensation Division, naming the insolvent insurer and the Guaranty Association as respondents. This led to *Taft v. Advance United Expressways*, 464 N.W.2d 725 (Minn.1991), wherein we ruled that the jurisdiction of the Workers' Compensation Division did not extend to interpreting or applying the provisions of the Guaranty Act. *Id.* at 727. We also said the remedy was to follow the procedures in Chapter 60C or bring a declaratory judgment action in district court. *Id.*

Subsequently, National Union Fire, American States Insurance Company, Employers Insurance of Wausau, and Western National Insurance Group (accompanied by their respective insured employers) brought separate declaratory judgment actions to determine if their contribution claims were "covered claims" under Minn.Stat. § 60C.09, subd. 2 (1992). The actions were consolidated for hearing in district court. The Guaranty Association sought summary judgment, claiming that as a matter of law, the workers' compensation insurers' claims were not "covered claims." Appellants filed cross-motions for summary judgment. The trial court determined that the insurers' claims for contribution were not "covered claims" under Minn.Stat. § 60C.09, subd. 2 (1992) and summary judgment was entered for the Guaranty Association. On appeal, the court of appeals affirmed.

The Minnesota Insurance Guaranty Association was created in 1971. Act of April 22, 1971, ch. 145, 1971 Minn.Laws 277–88, *codified at* Minn.Stat. ch. 60C. The basic purpose of the Guaranty Act is to provide a mechanism for payment of "covered claims" to claimants or policyholders of insolvent insurers. Minn.Stat. § 60C.02, subd. 2. The Guaranty Association is required to assume the contractual obligations of the insolvent insurer to its policyholder in respect to statutorily defined covered claims [1] up to the amount of the policyholder's contract but generally subject to a maximum liability of $300,000. *Id.* at subd. 3. This limitation on liability does not apply to workers' compensation. Minn.Stat. §§ 60C.05 and 60C.09. The operation of the association is funded by assessments levied on the member insurers, Minn.Stat. § 60C.06, the cost of which is passed on directly to policyholders, Minn. Stat. § 60C.18. The Guaranty Act did not apply to workers' compensation insurers un-til 1981. Act of June 1, 1981, ch. 346, § 36, 1981 Minn.Laws 1635.

Although Minnesota's Guaranty Act was patterned after the Model Act developed by the National Association of Insurance Commissioners, unlike the Model Act, Minnesota's Act did not exclude claims made by insurers until the Act was amended in 1988. *Compare* Life and Health Insurance Guaranty Association Model Act, III, 540–3 (National Association of Insurance Commissioners Oct. 1993) *with* Act of April 18, 1988, ch. 541, § 8, 1988 Minn.Laws 457–58. Consequently, as all of the contribution claims involved in this appeal were made after the effective date of the amendment, under the version applicable here, "a covered claim does not include: (1) claims by an affiliate of the insurer; and (2) *claims due a reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise.* This clause does not prevent a person from presenting the excluded claim to the insolvent insurer or its liquidator, but the

---

1. Minn.Stat. § 60C.09, subd. 1 provides:
    A covered claim is any unpaid claim, including one for unearned premium, which:
    (a)(1) Arises out of and is within the coverage of an insurance policy issued by a member insurer if the insurer becomes an insolvent insurer after April 30, 1979; or
    (2) Would be within the coverage of an extended reporting endorsement to a claims-made insurance policy if insolvency had not prevented the member insurer from fulfilling its obligation to issue the endorsement, if:
    (i) the claims-made policy contained a provision affording the insured the right to purchase a reporting endorsement;
    (ii) coverage will be no greater than if a reporting endorsement had been issued;
    (iii) the insured has not purchased other insurance which applies to the claim; and
    (iv) the insured's deductible under the policy is increased by an amount equal to the premium for the reporting endorsement, as provided in the insured's claims-made policy, or if not so provided, then as established by a rate service organization.
    (b) Arises out of a class of business which is not excepted from the scope of this chapter by section 60C.02; and
    (c) Is made by:
    (i) A policyholder, or an insured beneficiary under a policy, who, at the time of the insured event, was a resident of this state; or
    (ii) A person designated in the policy as having an insurable interest in or related to property situated in this state at the time of the insured event; or
    (iii) An obligee or creditor under any surety bond, who, at the time of default by the principal debtor or obligor, was a resident of this state; or
    (iv) A third party claimant under a liability policy or surety bond, if (a) the insured or the third party claimant was a resident of this state at the time of the insured event; (b) the claim is for bodily or personal injuries suffered in this state by a person who when injured was a resident of this state; or (c) the claim is for damages to real property situated in this state at the time of damage; or
    (v) A direct or indirect assignee of a person who except for the assignment might have claimed under item (i), (ii), or (iii).
    For purposes of paragraph (c), item (ii), unit owners of condominiums, townhouses, or co-operatives are considered as having an insurable interest.
    A covered claim also includes any unpaid claim which arises or exists within 30 days after the time of entry of an order of liquidation with a finding of insolvency by a court of competent jurisdiction unless prior thereto the insured replaces the policy or causes its cancellation or the policy expires on its expiration date. A covered claim does not include claims filed with the guaranty fund after the final date set by the court for the filing of claims except for workers' compensation claims that have met the time limitations and other requirements of chapter 176 and excused late filings permitted under section 60B.37.

claims shall not be asserted against another person, including the person to whom the benefits were paid or the insured of the insolvent insurer, except to the extent that the claim is outside the coverage of the policy issued by the insolvent insurer." Minn.Stat. § 60C.09, subd. 2(2) (emphasis added).

■ Appellants argue their claims are covered and not excluded as "subrogation recoveries or otherwise;" but the term "otherwise" generally means "differently," "different way or manner," and even "various." As used in subdivision 2(2) of section 60C.09, the language is certainly broad enough to encompass amounts claimed by an insurer as contribution or reimbursement. Courts construing similar provisions in Guaranty Association Acts in other jurisdictions have concluded that member insurers do not come within the protection of such acts. *E.g., Ursin v. Ins. Guaranty Ass'n,* 412 So.2d 1285, 1289 (La.1981); *Ferrari v. Toto,* 383 Mass. 36, 417 N.E.2d 427, 428–29 (1981); *Sussman v. Ostroff,* 232 N.J.Super. 306, 556 A.2d 1301, 1304 (Ct.App.Div.1989). *See also* Carol J. Miller, Annotation, BB Rule 16.5.5., *Validity, Construction, and Effect of Statute Establishing Compensation for Claims Not Paid Because of Insurer's Insolvency,* 30 A.L.R.4th 1110 (1984).

■ More significant, however, is the underlying purpose sought to be advanced by the Guaranty Act. In effect, the legislature has provided protection for policyholders of and claimants against insolvent insurers at the direct cost of all of the policyholders of the member insurers, whose premium charges include amounts sufficient to recoup a sum equal to the amounts paid to the association by the member insurers. By excluding claims of what may be described as insurance industry creditors, policyholders pay only for the protection lost by similarly-situated policyholders of insolvent insurers. The members of the insurance industry itself bear the risk of loss of their own direct claims against the insolvent carrier, which they still may assert against the insolvent carrier's receiver. In other words, the Guaranty Act does not provide a solvent substitute for an insolvent insurer, but rather, is a limited form of protection for the public. It is not a fund for the protection of other insurance companies from the insolvencies of fellow members.[2] *Reinsurance Ass'n v. Dunbar Kapple, Inc.,* 443 N.W.2d 242, 246 (Minn.App.1989); *E.L. White, Inc. v. City of Huntington Beach,* 138 Cal.App.3d 366, 187 Cal.Rptr. 879, 882 (1982). *See Kinney v. Leaman,* 14 Mass.App.Ct. 926, 436 N.E.2d 996, 997 (1982).

■ Appellants also contend that exclusion of workers' compensation contribution claims under Minn.Stat. § 60C.09, subd. 2(2) creates a conflict with Minn.Stat. § 176.191 [3] which requires a workers' compensation insurer to provide benefits pending a dispute between multiple employers or insurers over which is liable but gives the paying agent a right of reimbursement from the insurer ulti-

**2.** The exclusion of claims made by insurance industry creditors is also consistent with comments made before the Senate Commerce Committee to the effect that the intent of that provision was to "cut off litigation against the fund by its own member insurance companies" and that the "effect" of the provision was to put MIGA in conformance with the legislation found in most other states. Hearing, Senate Commerce Committee, 75th Minn.Leg., March 7, 1988 (comments of Sen. Spear, sponsor).

**3.** Minn.Stat. § 176.191, subd. 1 provides:
Where compensation benefits are payable under this chapter, and a dispute exists between two or more employers or two or more insurers as to which is liable for payment, the commissioner, compensation judge, or court of appeals upon appeal shall direct, unless action is taken under subdivision 2, that one or more of the employers or insurers make payment of the benefits pending a determination of liability. A temporary order may be issued under this subdivision whether or not the employers or insurers agree to pay under the order.
When liability has been determined, the party held liable for the benefits shall be ordered to reimburse any other party for payments which the latter has made, including interest at the rate of 12 percent a year. The claimant shall also be awarded a reasonable attorney fee, to be paid by the party held liable for the benefits.
An order directing payment of benefits pending a determination of liability may not be used as evidence before a compensation judge, the workers' compensation court of appeals, or court in which the dispute is pending.

mately held liable.[4] The purpose of section 176.191, the substance of which pre-dated the Guaranty Act's coverage of workers' compensation by some 40 years,[5] is to "supplement the statutory duty of an employer factually and legally liable for benefits to commence payment * * * and to ensure that an employee clearly entitled to benefits should not suffer a delay in payment because of a dispute as to liability for payment between two or more employers." *Lease v. Pemtom, Inc.,* 305 Minn. 6, 13–14, 232 N.W.2d 424, 428–29 (1975). Section 60C.02(2), a provision that requires insurers to absorb the loss of its claims against an insolvent insurer, contains nothing out of harmony with section 176.191, a provision that provides for the prompt payment of benefits to an injured employee. Also, the workers' compensation contribution claims involved here are essentially claims for equitable apportionment, or the proportionate allocation of liability among various employers and insurers, and it is these kinds of claims that have long been subject to problems occasioned by the insolvencies of the employers or their insurers, leaving the second employer or insurer solely liable for the compensation. *See Haverland v. Twin City Milk Producers Ass'n.,* 273 Minn. 481, 490, 142 N.W.2d 274, 280–81 (1966). In any event, equitable apportionment, "is simply a predicate fact" to appellants' contention that they have "covered claims" when made against the Guaranty Association. *Taft,* 464 N.W.2d at 727. Inasmuch as the plain language of the Guaranty Act excludes claims

due insurers, appellants' claims are not covered.[6]

Affirmed.

COYNE, Justice (concurring specially).

Although I agree with the proposition set out in the majority opinion that an insurer's equitable contribution claim is not a "covered claim" within the meaning of chapter 60C of the Minnesota Statutes—whether that claim arises with respect to workers' compensation benefits or otherwise—it seems to me that the nature of the claim of two of the appellants, Donlar Construction Company and American States Insurance Company, ought not be characterized as a claim for "equitable contribution."

Workers' compensation is, as we have commented from time to time, a creature of statute without counterpart in the common law. The claim of Donlar Construction and American States Insurance Company arises out of their payment of workers' compensation benefits in compliance with a temporary order issued by Compensation Judge James M. Gallagher pursuant to Minn.Stat. § 176.-191, subd. 1 (1992), which provides as follows:

Where compensation benefits are payable under this chapter, and a dispute exists between two or more employers or two or more insurers as to which is liable for payment, the commissioner, compensation judge, or court of appeals upon appeal shall direct, unless action is taken under subdivision 2, that one or more of the

---

4. Only American States Insurance Company and its insured, Donlar Construction Company, agreed to the payment of benefits pursuant to a section 176.191 temporary order; but the order was issued after section 60C.02 had been amended to exclude claims due insurers.

5. *See* Minn.Stat. § 176.255 (1941).

6. Appellants also contend that exclusion of their contribution claims by way of section 60C.02, subd. 2(2), violates due process and equal protection guarantees under the state and federal constitutions. The civil appellate rules require that the attorney general be given notice when the constitutionality of any statute is challenged on appeal. Minn.R.Civ.App.P. 144 (1994). Appellants apparently served notice at the trial court level, but notice is also required on appeal. *Campbell v. Glenwood Hills Hosp.,* 273 Minn. 525, 142 N.W.2d 255, 261 (1966); *see* Magnuson,

Herr and Haydock, *Appellate Rules Annotated,* 3 Minnesota Practice 502 (1985). The constitutional claims are nevertheless meritless. The due process challenge is grounded on principles applicable to vesting of rights afforded by the Workers' Compensation Act which are incidents of the employment relationship; but these principles have no bearing on any rights afforded by the Guaranty Act. The issue is not about whether appellants have or had vested rights against the insolvent insurers but about whether they have covered claims, enforceable against the Guaranty Association "—a quite different matter." *Taft,* 464 N.W.2d at 727. As to the equal protection challenge, the record made in this case simply does not provide the kind of evidence of disparate treatment of similarly-situated entities necessary to sustain a constitutional challenge.

employers or insurers make payment of the benefits pending a determination of liability. A temporary order may be issued under this subdivision whether or not the employers or insurers agree to pay under the order.

When liability has been determined, the party held liable for the benefits shall be ordered to reimburse any other party for payments which the latter has made, including interest at the rate of 12 percent a year. The claimant shall also be awarded a reasonable attorney fee, to be paid by the party held liable for the benefits.

An order directing payment of benefits pending a determination of liability may not be used as evidence before a compensation judge, the workers' compensation court of appeals, or court in which the dispute is pending.

The prohibition against use of the order in the proceeding to determine which employer or insurer is liable for the benefits appears to indicate legislative recognition that the order is intended only to provide prompt payment of benefits to the injured worker without reference to whether the payer has any liability for those benefits.

Moreover, the statute mandates that once liability is determined, "the party held liable for the benefits *shall be ordered* to reimburse" the party who paid pursuant to the temporary order. *Id.* (emphasis added). The order is to include interest as well. *Id.*

That statutory structure bears no resemblance to subrogation. An insurer which has paid benefits in compliance with a temporary order has a direct statutory right of reimbursement from the party or parties found to be liable for those benefits. The insurer does not stand in the shoes of its insured for the purpose of asserting a claim for contribution or indemnity. The compensation judge is required by Minn.Stat. § 176.191, subd. 1 (1992) to order reimbursement plus interest.

When, in 1971, Minnesota created the Minnesota Insurance Guaranty Association, the act adopted by the legislature departed in several significant respects from the Model Act proposed by the National Association of Insurance. In particular, the legislature omitted from the definition of "covered claim" Section 5 F.(2) of the Model Act:

'Covered claim' shall not include any amount awarded as punitive or exemplary damages; sought as a return of premium under any retrospective rating plan; or due any reinsurer, insurer, insurance pool or underwriting association as subrogation recoveries or otherwise.

Life and Health Insurance Guaranty Association Model Act, III, 540–3 (National Association of Insurance Commissioners Oct. 1993). The Comment to this section of the Model Act states, "The subcommittee does not feel that coverage should be extended to elements of the insurance industry which know or reasonably can be expected to know the financial condition of various companies." *Id.* I think it unlikely that the insolvency of a particular insurance company comes as a surprise to most members of the insurance industry. Knowledge of the financial condition of various insurance companies is essential to sound business decisions by reinsurers, insurance pools and underwriting associations, and that knowledge may affect the decision of an insurer which anticipates asserting a subrogation claim. I am, however, at a loss to understand how knowledge of the shaky financial condition of another insurer can have any affect on the conduct of an insurer ordered by the commissioner, a compensation judge or the workers' compensation court of appeals to pay benefits pending determination of liability for those benefits— unless it is to discourage compliance with the temporary order, an effect hardly to be desired.

The statutory duty to pay an obligation which an insurer has neither contractual nor legal obligation to pay other than that imposed by temporary order and the correlative statutory right to reimbursement are both set out with particularity in the Workers' Compensation Act. Minn.Stat. § 176.-191, subd. 1 (1992). Although I do not question the power of the legislature to deny insurers recourse against the MIGA, it does seem to me that if the legislature wishes to exempt the MIGA from claims arising pursuant to section 176.191, subd. 1 orders, it must do so explicitly and not by a broad catch-all

phrase of uncertain meaning such as "or otherwise," particularly where the uncertainty is compounded by linking "or otherwise" to "subrogation," a term having no relationship to the statutory right of reimbursement.

Finally, it must be recognized that unreimbursed payments pursuant to a temporary order will undoubtedly affect the insured's experience rating and cause an increase in the premium which the insured must subsequently pay for workers' compensation liability insurance. Although the MIGA suggests that it would honor the claims of insureds for increased premiums resulting from the deprivation of the insurer's right to enforce.the statutory reimbursement order as a covered claim, I think it unlikely that the insured employer would be aware of the right to make claim against the MIGA or able to determine the proper amount to be claimed.

Having said that, however, I nevertheless concur with the result reached by the majority because of the posture of this case in this court. The claim which Donlar Construction Company and American States Insurance Company have made is for contribution. It appears that the insurers of the employer at the time of the employee's two earlier injuries agreed to partial reimbursement of American States, and the parties entered into a *Pierringer* release. Under the circumstances it seems to me an overstatement to say that Donlar Construction Company and its insurer had no legal obligation to pay benefits to this employee. Therefore, I concur in the result.

SIMONETT, Justice (concurring specially).

I agree with the special concurrence of Justice Coyne.

PAGE, Justice (concurring specially).

I agree with the special concurrence of Justice Coyne.