David K. SEEHUS, Respondent,

v.

BOR–SON CONSTRUCTION, INC.
and CNA–RSKO, Respondents,

Wesley Residence, Inc. and MIGA by
GAB Robins North America,
Relators,

and

Twin Cities Spine Center, Blue Cross/
Blue Shield of Minnesota & Blue
Plus, SMDC Health System, Minneso-
ta DOLI/Vocational Rehab. Unit, Dr.
Christine A. Audette, and Chiropractic
Health Center, Intervenors.

No. A09–1388.

Supreme Court of Minnesota.

June 10, 2010.

Russell J. LaCourse, LaCourse Law Office, P.A., Duluth, Minnesota, for respondent David K. Seehus.

Larry J. Peterson, Brent Kleffman, Peterson, Logren & Kilbury, P.A., St. Paul, Minnesota, for respondents Bor–Son Construction, Inc. and CNA–RSKO.

Michael D. Miller, Jeffrey R. Homuth, McCollum, Crowley, Moschet & Miller, Ltd., Minneapolis, Minnesota, for relators.

## OPINION

DIETZEN, Justice.

David K. Seehus filed a claim petition seeking workers' compensation benefits for work-related injuries sustained during the course of his employment at Wesley Residence, Inc. (Wesley), on March 19, 2001. Because Wesley's workers' compensation insurer was insolvent, the Minnesota Insurance Guarantee Association (MIGA) administered the claim. Subsequently, the workers' compensation judge ordered Seehus's previous employer, Bor–Son Construction, Inc. (Bor–Son), and its workers' compensation insurer, CNA–RSKO (CNA),[1] to be joined as parties. Following a hearing, the compensation judge filed an order that concluded that the workers' compensation court lacked subject-matter jurisdiction to order MIGA to pay Seehus's claim, and that CNA was responsible for the entire claim. The Workers' Compensation Court of Appeals (WCCA) reversed on the ground that the compensation judge lacked jurisdiction to order the joinder of the previous employer and its insurer and ordered Wesley/MIGA to pay the claim. Wesley/MIGA petitioned for certiorari review.

Because we conclude that the compensation judge had the authority to determine causal responsibility between the injuries sustained at Bor–Son and Wesley, we reverse the decision of the WCCA and reinstate the decision of the compensation judge.

Seehus sustained a work-related lower back injury on March 8, 1989, while employed as a carpenter for Bor–Son. Seehus received physical therapy, but continued to experience back pain. Consequently, Seehus had lower back surgery in April 1989 and a second lower back surgery in October 1989 to resolve his back pain. After his medical treatment, Seehus was rated with an 11% permanent partial disability based upon his lower back injury. Seehus settled his claim against Bor–Son.

In 1990, Seehus began working for Wesley as a maintenance worker. While still employed at Wesley, Seehus suffered a new work-related lower back injury on March 19, 2001. When conservative medical treatment did not resolve his back pain, he underwent a third lower back surgery in May 2007.

Seehus filed a workers' compensation claim petition in June 2007 against Wesley and its workers' compensation insurer, Meadowbrook Insurance Group/GAB Robins (Meadowbrook). Because Meadowbrook was insolvent, MIGA[2] administered the claim for the benefit of Wesley.[3] In October 2007, MIGA filed a motion for joinder and for contribution/reimbursement against CNA, which was granted by the compensation judge.

Before the hearing, Seehus entered into a partial stipulation for settlement with MIGA that closed out all of his claims for benefits against MIGA except non-chiropractic medical expenses. The case proceeded to hearing on the question of the medical causation responsibility between the two compensable work injuries.

---

1. We will refer to Bor–Son and its workers' compensation insurer CNA collectively as CNA when discussing who is liable for Seehus's injuries.

2. MIGA was established by the legislature under Minnesota Statutes chapter 60C (2008) as described more fully in *infra* section I.

3. Because MIGA administered Seehus's claim for the benefit of Meadowbrook and Wesley, we will refer to the entities collectively as MIGA.

At the hearing, MIGA submitted a deposition from a doctor who had examined Seehus and concluded that the Wesley injury was not a significant contributing factor to Seehus's need for medical treatment. CNA submitted a deposition from a doctor who had also examined Seehus and concluded that both injuries were substantial contributing factors to Seehus's present lower back symptoms and apportioned 50% of the responsibility to the Bor–Son injury and 50% to the Wesley injury.

The compensation judge issued findings and an order, which, among other things, apportioned liability at 50% for the Bor–Son injury and 50% for the Wesley injury. But the compensation judge concluded that the workers' compensation court lacked subject-matter jurisdiction to direct MIGA to make payments in a case where an alternative workers' compensation insurer is present. Therefore, the compensation judge ordered CNA to pay 100% of Seehus's claim.

CNA appealed to the WCCA. CNA argued that the compensation judge erred in finding that (1) the court lacked subject-matter jurisdiction to order MIGA to pay an employee's claims where a solvent workers' compensation insurer is present, (2) CNA was responsible for 100% of Seehus's claim, and (3) CNA's reimbursement remedy is under Minn.Stat. ch. 60C (2008). Neither party appealed the finding that equally apportioned liability between MIGA and CNA. The WCCA reversed the findings and order of the compensation judge. *Seehus v. Bor–Son Constr., Inc.,* 2009 WL 2199679, at *5 (Minn. WCCA July 9, 2009). The WCCA concluded that the compensation judge lacked subject-matter jurisdiction to order the joinder of CNA, and ordered MIGA to pay Seehus's claim. *Id.* MIGA appealed the WCCA's decision to this court by petitioning for a writ of certiorari.

## I.

MIGA argues that the WCCA lacked subject-matter jurisdiction to order MIGA to pay Seehus's claim on the ground that the WCCA lacked the authority to determine whether Seehus's claim was a "covered claim" under chapter 60C. CNA argues that MIGA waived the subject-matter jurisdiction defense by failing to assert it and that the compensation judge had the authority to determine Seehus's claim, particularly because MIGA was the only named party to the proceeding. CNA contends that the compensation judge lacked the authority to order the joinder of CNA on the ground that joinder is merely a method for MIGA to pursue its contribution/reimbursement claim against CNA, which this court has previously determined MIGA cannot do.

■■■ Subject-matter jurisdiction is the court's authority to hear the type of dispute at issue and to grant the type of relief sought. *See Robinette v. Price,* 214 Minn. 521, 526, 8 N.W.2d 800, 804 (1943). The question of whether subject-matter jurisdiction exists is a question of law for the court. *Hale v. Viking Trucking Co.,* 654 N.W.2d 119, 123 (Minn.2002). Defects in subject-matter jurisdiction may be raised at any time, and cannot be waived by the parties. *In re Civil Commitment of Giem,* 742 N.W.2d 422, 427 (Minn.2007); *see also Eberhart v. United States,* 546 U.S. 12, 16, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005) (discussing the distinction between jurisdictional rules and "claim-processing" rules); *Rubey v. Vannett,* 714 N.W.2d 417, 421–22 (Minn.2006) (discussing the distinction between jurisdictional rules and procedural rules). Additionally, subject-matter jurisdiction cannot be "conferred by consent of the parties." *Hemmesch v. Molitor,* 328 N.W.2d 445, 447 (Minn.1983).

To determine whether the workers' compensation courts had subject-matter jurisdiction over Seehus's claim requires an examination of the authority of those courts, the applicable provisions of Minn. Stat. ch. 60C, and relevant case law. Thereafter, we must apply chapter 60C and relevant case law to resolve the issue of subject-matter jurisdiction.

▮ The workers' compensation adjudication system is "based to a significant extent on the judicial model of decision-making." *Kline v. Berg Drywall, Inc.*, 685 N.W.2d 12, 18 (Minn.2004) (citation omitted) (internal quotation marks omitted). The workers' compensation judge at the Office of Administrative Hearings determines all contested issues of fact and law. Minn.Stat. § 176.371 (2008) ("The compensation judge's decision shall include a determination of all contested issues of fact and law. . . ."); *see also* Minn.Stat. § 176.011, subd. 7a (2008) (defining "compensation judge"). Although not "constitutionally protected," compensation judges "do have a certain degree of independence from the agency in which they adjudicate disputes as they are the people who have been charged with the responsibility of ascertaining the substantial rights of the parties in a fair and objective manner." *Kline*, 685 N.W.2d at 18 (citation omitted) (internal quotation marks omitted).

The WCCA was established by the legislature as "an independent agency in the executive branch." Minn.Stat. § 175A.01, subd. 1 (2008). The compensation judge's findings and order may be appealed to the WCCA. Minn.Stat. § 176.421, subd. 1 (2008). The WCCA has "final authority for the hearing and determination of all questions of law and fact arising under workers' compensation laws of the state in those cases that have been appealed to the [WCCA] and in any case that has been transferred by the district court to the [WCCA]." Minn.Stat. § 175A.01, subd. 5 (2008). Subdivision 5 states that the WCCA "shall have no jurisdiction in any case that does not arise under the workers' compensation laws of the state." *Id.*

Based upon injuries that he sustained due to a work-related accident on March 19, 2001, Seehus filed a workers' compensation claim petition that named his employer, Wesley, and its workers' compensation insurer, Meadowbrook, as parties. Because Meadowbrook was insolvent, Seehus's claim was administered by MIGA for the benefit of Wesley.

MIGA was created in 1971 by the Minnesota Legislature in the Guaranty Act.[4] Act of Apr. 22, 1971, ch. 145, §§ 1–23, 1971 Minn. Laws 277, 277–88 (codified as amended at Minn.Stat. ch. 60C (2008)); *Goodyear Tire & Rubber Co. v. Dynamic Air, Inc.*, 702 N.W.2d 237, 241 (Minn.2005). The basic purpose of the Guaranty Act is to provide a mechanism for payment of "covered claims" to claimants or policyholders of insolvent insurers. Minn.Stat. § 60C.02, subd. 2. MIGA is required to assume the contractual obligations of the insolvent insurer to its policyholder regarding statutorily defined "covered claims" subject to the amount of the policyholder's contract and generally subject to a maximum liability of $300,000. Minn. Stat. § 60C.09, subd. 3. This limitation of liability does not apply to workers' compensation claims. *Id.* MIGA is funded by assessments levied on the member insurers. Minn.Stat. § 60C.06. This cost is passed on directly to policyholders. Minn. Stat. § 60C.18.

---

4. MIGA did not apply to workers' compensation claims until 1981. Act of June 1, 1981, ch. 346, § 35, 1981 Minn. Laws 1635, 1635 (codified as amended at Minn.Stat. § 60C.04 (2008)).

The parties rely on several decisions of this court to support their respective positions regarding the subject-matter jurisdiction of the workers' compensation courts. See *Taft v. Advance United Expressways*, 464 N.W.2d 725 (Minn.1991); *Gerads v. Bernick's Pepsi–Cola*, 486 N.W.2d 433 (Minn.1992); *Wiss v. Advance United Expressway*, 488 N.W.2d 802 (Minn.1992). These cases involved employees who sustained multiple work-related injuries potentially covered by different workers' compensation insurers, one of which was insolvent and therefore was administered by MIGA. Because these cases were relied upon by the parties, we address them first.

In *Taft*, the solvent workers' compensation insurer filed a petition for reimbursement or contribution with the workers' compensation division naming the insolvent insurer and MIGA as respondents. 464 N.W.2d at 726. The issue before the court was whether the WCCA had jurisdiction over a claim by a workers' compensation insurer against MIGA for reimbursement of benefits paid on behalf of the insolvent insurer. *Id.* We noted that in Minn.Stat. ch. 60C the legislature provided a specific mechanism for dealing with claims against insolvent insurers. *Id.* at 727. Under chapter 60C, claims are filed with MIGA, MIGA determines if the claim is a "covered claim" and what payments can be made, and MIGA's decision may be appealed to either the Commissioner of Commerce or the judiciary. *Id.* The workers' compensation insurer sought to bypass the chapter 60C process, and brought a petition for equitable apportionment[5] be-

fore the workers' compensation court. *Id.* Significantly, we explained that "[t]his case is not about whether [the solvent insurer] has or had a claim against [the insolvent insurer] but about whether [the solvent insurer] has a covered claim against the Guaranty Association—a quite different matter." *Id.* In other words, the issue was not whether there was a claim against the insolvent insurer for equitable apportionment under the workers' compensation statutes, but rather whether the solvent insurer's claim against MIGA constituted a "covered claim" under chapter 60C. Recognizing that distinction, we concluded that the jurisdiction of the WCCA "does not extend to interpreting or applying legislation designed specially for the handling of claims against insolvent insurance companies in this state." *Id.*

In *Gerads*, MIGA filed a petition with the workers' compensation division for contribution against a solvent insurer that was liable for prior work-related injuries sustained by the employee. 486 N.W.2d at 434. The WCCA concluded that the workers' compensation court had jurisdiction over MIGA's claim. *Id.* We reversed, concluding: "The basis for MIGA's payments to an injured worker—*as distinguished from the amount and period of compensation due the worker*—rest in chapter 60C, not chapter 176. MIGA's rights against [the workers' compensation insurers] also rest in chapter 60C, not chapter 176." *Id.* (emphasis added). Reiterating our conclusion in *Taft* that the WCCA lacks subject-matter jurisdiction to construe or apply chapter 60C, we held the WCCA did not have authority to "make the legal determi-

---

5. In *Taft*, *Gerads*, and *Wiss*, the parties filed petitions for reimbursement, contribution, and equitable apportionment. It appears that "equitable apportionment" was intended by the parties to incorporate both reimbursement and contribution claims. For ease of reference, we will refer to petitions for contri-

bution or reimbursement collectively as petitions for contribution. We recognize that reimbursement and contribution are different, and that the differences are important. But for purposes of our analysis in this case, those differences are not at issue.

nation as to MIGA's right to proceed as it did." 486 N.W.2d at 434.

In *Wiss*, the employee sustained multiple work-related injuries that occurred when the employer was insured by two different insurance companies, one of which was later declared insolvent and its claims were administered by MIGA. 488 N.W.2d at 803. Wiss filed a claim petition naming both MIGA and the solvent insurance company as parties. *Id.* The solvent insurance company filed a petition requesting that its liability be reduced by the amount of liability attributable to the insolvent insurer. *Id.* The WCCA concluded that the workers' compensation court had jurisdiction to "equitably apportion" liability against MIGA. *Id.* at 804.

We reversed, reaffirming that the workers' compensation court does not have jurisdiction to interpret or apply the provisions of chapter 60C because petitions for contribution between solvent insurance carriers and MIGA are beyond the jurisdiction of the workers' compensation courts. *Id.* We observed that the fact that the employee had filed a claim against both MIGA and the solvent insurer "did not change what was primarily a collateral dispute between MIGA and the carrier seeking to reduce its liability through the workers' compensation system instead of through the procedures outlined in *Taft*," namely, the procedures in chapter 60C. *Id.* We emphasized that this was not a claim for equitable apportionment between the solvent and insolvent insurers, and explained again that equitable apportionment "is simply a predicate fact to [the solvent insurer's] claim that the entitlement constitutes a 'covered claim.'" *Id.* (quoting *Taft*, 464 N.W.2d at 727).

In summary, the important issue in each of these cases was whether claims for contribution could be maintained between solvent workers' compensation insurers and MIGA. Because the resolution of that issue turned on the interpretation of chapter 60C and not chapter 176, we concluded that the workers' compensation courts lacked subject-matter jurisdiction. Whether there would be a basis for contribution between those entities under workers' compensation law was viewed simply as a "predicate fact" to the ultimate legal question of whether a solvent insurer's claim could be asserted against MIGA under chapter 60C.

We resolved the ultimate legal question in *Maxwell Communications v. Webb Publishing Co.*, 518 N.W.2d 830 (Minn.1994). *Maxwell* was a consolidated declaratory judgment action involving workers' compensation claims of four employees who had sustained compensable injuries in multiple accidents, and in which the workers' compensation insurers liable for the prior injuries had become insolvent and their claims were administered by MIGA. *Id.* at 831. The solvent workers' compensation insurers and their insured employers brought declaratory judgment actions[6] to determine if their contribution claims against MIGA were "covered claims" under Minn.Stat. § 60C.09, subd. 2 (1992). 518 N.W.2d at 831. On cross-motions for summary judgment, the district court ruled in favor of MIGA, holding that the solvent insurers' claims were not "covered claims," and the court of appeals affirmed. *Id.*

We framed the issue as "whether a workers' compensation liability insurer's equitable contribution claim is a 'covered

---

**6.** The plaintiffs in one of the consolidated actions were the solvent insurer and its insured employer from the *Taft* case, which had followed our direction in that case to seek a remedy by following "the procedures in Chapter 60C or bring a declaratory judgment action in district court." *Maxwell*, 518 N.W.2d at 831.

claim,' enforceable against [MIGA] under Chapter 60C." *Id.* We answered the question in the negative and affirmed the court of appeals. *Id.* Specifically, we determined that a solvent workers' compensation insurer does not have a contribution claim for equitable apportionment against MIGA because the claim is not a "covered claim" under chapter 60C, even if the workers' compensation law would have made the insolvent insurer partially or fully liable for the injuries were it still solvent.[7] *Id.* at 832–33. We reasoned that a workers' compensation insurer's claim for contribution falls within the exclusions set forth in Minn.Stat. § 60C.09, and therefore is not a "covered claim." *Maxwell,* 518 N.W.2d at 833; *see* Minn.Stat. § 60C.09, subd. 2(2) (providing that a covered claim does not include "claims due a reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries, reinsurance recoveries, contribution, indemnification, or otherwise").

### II.

■ With the foregoing principles in mind, we turn to the specific issues in this appeal. MIGA argues that the Seehus claim is not a "covered claim" under Minn. Stat. ch. 60C, and therefore the WCCA lacked subject-matter jurisdiction to order MIGA to pay benefits. Thus, MIGA argues that the WCCA erred in concluding that MIGA is liable for the Seehus claim. The WCCA reasoned that "the essential nature of the relief sought by MIGA was contribution and/or reimbursement and the compensation judge lacked jurisdiction over that claim." *Seehus,* 2009 WL 2199679, at *5. The court relied on the

pre-*Maxwell* cases of *Taft, Gerads,* and *Wiss* to support its conclusion.[8]

■ In *Maxwell,* we determined that a solvent workers' compensation insurer does not have a contribution claim against MIGA because it is not a "covered claim" under chapter 60C. 518 N.W.2d at 834. The premise for this conclusion is that the purpose of the Guaranty Act is to protect policyholders and claimants, and not member insurers. *Id.* at 833. The Guaranty Act "is not a fund for the protection of state insurance companies from the insolvencies of fellow members." *Id.* As a result, when there are equitable contribution claims involving successive insurers, MIGA cannot be required to share liability for injuries with a solvent insurer. *Id.* at 833–34 (concluding that solvent workers' compensation insurer cannot assert a contribution claim against MIGA).

■ The logical corollary of *Maxwell* is that when a solvent workers' compensation insurer is determined to bear some causal responsibility for an employee's claim, the solvent workers' compensation insurer is solely liable for the claim. *Cf. Haverland v. Twin City Milk Producers Ass'n,* 273 Minn. 481, 490, 142 N.W.2d 274, 280–81 (1966) ("[W]here, because of dissolution, insolvency, or payment of total compensation liability, the employee's rights against the former employer are nonexistent, then the second employer of necessity would remain solely liable for his compensation...."). Consequently, we must examine whether the workers' compensation judge had jurisdiction to determine wheth-

---

7. We noted in *Maxwell* that the exclusion of an insurer's claim for contribution or reimbursement against MIGA under chapter 60C does not preclude presenting the claim to the insolvent insurer or its receiver. 518 N.W.2d at 832.

8. *Maxwell* was not briefed or argued by the parties in either the workers' compensation courts or before our court.

er CNA bears some causal responsibility for the Seehus claim.

The liability of CNA turns on traditional workers' compensation issues of whether the injuries were work-related, whether there was causal effect between the current disability and both the prior and recent injuries, and the apportionment of causation. These issues arise under and are determined based on interpretation and application of workers' compensation law, chapter 176, not chapter 60C. Because these issues turn on the interpretation and application of chapter 176 rather than chapter 60C, we conclude that the jurisdictional impediment we found in *Taft, Gerads,* and *Wiss* does not exist in this case. It is precisely the function of the workers' compensation system to adjudicate such issues. *See generally Roemhildt v. Gresser Cos.,* 729 N.W.2d 289, 297–98 (Minn.2007) (summarizing Minnesota's history of applying equitable apportionment in workers' compensation cases); *see also Peterson v. O.R. Anderberg Constr.,* 586 N.W.2d 269, 273 (Minn.1998) (explaining that Minn.Stat. § 176.191, subd. 1a, which limits the circumstances in which equitable apportionment of liability is allowed, applies "only in those situations in which the sole dispute is how responsibility for benefits should be allocated among successive employers and their respective insurers when all are undisputedly liable for some portion of the employee's disability for the period in question").

Where there is no overriding question that requires the interpretation or application of chapter 60C, it would be anomalous to deprive the workers' compensation courts of jurisdiction to decide the issues for which they were created. Thus, the workers' compensation courts are not deprived of jurisdiction to decide quintessential workers' compensation issues because MIGA is one of the parties. We therefore conclude that the workers' compensation judge had the authority to determine causal responsibility in this case.[9]

■ Finally, we turn to the question of liability for the Seehus claim. The workers' compensation judge found that the work-related injuries sustained by Seehus were substantial contributing causes to his current condition and need for medical treatment, and allocated responsibility as 50% for the Bor–Son injury and 50% for the Wesley injury. Those findings were not challenged on appeal and, in any event, are supported by the record. *See Varda v. Nw. Airlines Corp.,* 692 N.W.2d 440, 443 (Minn.2005) (stating that compensation judge's findings of fact will be affirmed unless they are " 'clearly erroneous and unsupported by substantial evidence in view of the entire record as submitted' " (quoting Minn.Stat. § 176.421, subd. 1(3) (2004))). *Maxwell* holds that MIGA cannot be compelled to share liability with a solvent workers' compensation insurer. 518 N.W.2d at 833–34. Consequently, CNA is solely liable for the Seehus claim.

Reversed; decision of workers' compensation judge reinstated.

PAGE, Justice (concurring).

I concur in the analysis and conclusion reached by the court. I write separately simply to clarify that in this opinion, when we refer to a "covered claim," we are

---

9. In that the compensation judge had subject-matter jurisdiction to adjudicate the claim, there was no error in the joinder of CNA. The applicable workers' compensation court rule provides that "[u]pon a motion of a party or upon a judge's own motion, a judge may order the joinder of additional parties necessary for the full adjudication of the case." Minn. R. 1420.1300, subp. 1 (2009). The compensation judge ordered joinder on the ground that CNA was a party "necessary for the full adjudication of the case."

talking about a claim within the meaning of the Guaranty Act, chapter 60C of the Minnesota Statutes, as distinguished from an employee's claim for injuries covered by the Workers' Compensation Act, chapter 176. Also, as Seehus remarked in his brief to the WCCA, he found himself caught "in the middle." There was no dispute that his medical care was reasonably required and causally related to a compensable injury. The sole dispute focused on which party should pay. Yet neither MIGA nor CNA sought a temporary order under Minn.Stat. § 176.191, subd. 1 (2008), which directs payment of benefits pending a determination of liability. "When liability has been determined, the party held liable for the benefits shall be ordered to reimburse any other party for payments which the latter has made, including interest at the rate of 12 percent a year." *Id.* The purpose of this provision is to "supplement the statutory duty of an employer factually and legally liable for benefits to commence payment ... and to ensure that an employee clearly entitled to benefits should not suffer a delay in payment because of a dispute as to liability for payment between two or more employers." *Lease v. Pemtom, Inc.,* 305 Minn. 6, 13–14, 232 N.W.2d 424, 428–29 (1975). It seems to me that employees like Seehus "should not suffer a delay in payment" just because their claims are being administrated by MIGA.